**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| WYLESHA AYRES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 19-cv-2148 |
| v. | ) | |
| | ) | Judge Colin S. Bruce |
| SHERIFF DEPUTIES CORY CHRISTENSEN | ) | |
| and CODY FLOYD, CHAMPAIGN COUNTY | ) | Magistrate Judge Eric I. Long |
| SHERIFF'S OFFICE, and CHAMPAIGN | ) | |
| COUNTY, ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Shneur Z. Nathan
Avi T. Kamionkski
Natalie Y. Adeeyo
Matthew C. Mc Carter
Nathan & Kamionski LLP
33 West Monroe, Suite 1830
Chicago, IL 60603
(312) 612-2255

# TABLE OF CONTENTS

**INTRODUCTION** ..................................................................................................................1

**RESPONSE TO UNDISPUTED MATERIAL FACTS** ........................................................6

    I.    UNDISPUTED MATERIAL FACTS .........................................................................6

    II.   DISPUTED MATERIAL FACTS ..........................................................................10

    III.  UNDISPUTED IMMATERIAL FACTS ...................................................................14

    IV.  ADDITIONAL MATERIAL FACTS .......................................................................17

**STANDARD OF LAW** ..........................................................................................................22

**ARGUMENT** .........................................................................................................................23

    I.    THE MANNER OF DEFENDANT CHRISTENSEN'S PAT-DOWN SEARCH OF PLAINTIFF WAS HIGHLY INTRUSIVE AND UNREASONABLE IN VIOLATION OF THE FOURTH AMENDMENT ...23

    II.   DEFENDANT FLOYD FAILED TO INTERVENE DURING THE UNREASONABLE PAT-DOWN SEARCH CONDUCTED BY DEFENDANT CHRISTENSEN IN VIOLATION OF THE FOURTH AMENDMENT ...................................................................................................30

    III.  DEFENDANT OFFICERS ARE NOT ENTITLED TO QUALIFIED IMMUNITY ............................32

    IV.  DEFENDANT OFFICERS CAUSED PLAINTIFF EXTREME EMOTIONAL DISTRESS AS A RESULT OF THEIR MISCONDUCT DURING THE PAT-DOWN SEARCH................................................36

    V.   CHAMPAIGN COUNTY IS LIABLE UNDER THE THEORY OF RESPONDEAT SUPERIOR FOR PLAINTIFF'S STATE LAW CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS .38

    VI.  DEFENDANTS SHOULD NOT BE GRANTED SUMMARY JUDGMENT ON PLAINTIFF'S INDEMNIFICATION CLAIM ...............................................................................39

**CONCLUSION** ....................................................................................................................39

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Anderson v. Cornejo*, 199 F.R.D. 228, 257 (N.D. Ill. 2000) .......................................................26, 32, 38

*Brown v. King*, 767 N.E.2d 357, 360 (Ill. App. Ct. 2001) ............................................................................ 42

*Burgess v. Lowery*, 201 F.3d 942, 944 (7th Cir. 2000).................................................................................. 39

*Casey v. Uddeholm Corp.*, 32 F.3d 1094, 1098 (7th Cir. 1994)..................................................................... 23

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.E.2d 265 (1986)..........................22, 23

*Clash v. Beatty*, 77 F.3e 1045, 1048 (7th Cir. 1996) ................................................................................... 40

*Dickey v. United States*, 174 F. Supp. 3d 366, 371 (D.D.C. 2016)................................................................ 38

*Doe v. Calumet City, Ill.*, 754 F.Supp. 1211, 1218 (N.D. Ill. Dec. 12, 1990) ............................................... 37

*Duffy v. Orlan Brook Condominium Owners' Ass'n*, 2012 IL App (1st) 113577, ¶ 35, 367 Ill.Dec. 341, 981 N.E.2d 1069 ............................................................................................................................................................ 41

*DuFour-Dowell v. Cogger*, 969 F. Supp. 1107, 1120 (N.D. Ill. 1997).....................................................25, 37

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.E.2d 396 (1982)....................................... 35

*Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008)......................................... 23

*Harrison v. City of Fort Wayne*, No. 17-cv-00419-SLC, 2020 WL 1536150, at *14 (N.D. Ind. Mar. 31, 2020)(Collins, Mag.) ........................................................................................................................................ 39

*Jimenez v. City of Chicago*, 732 F.3d 710, 721-22 (7th Cir. 2013) .............................................................. 32

*Kolegas v. Heftel Broadcasting Corp.*, 154 Ill.2d 1, 21, 180 Ill.Dec. 307, 607 N.E.2d 201 (Ill. 1992)...... 41

*Lessley v. City of Madison, Ind.*, 654 F. Supp. 2d 877 (S.D. Ind. 2009)...................................................29, 30

*Madyun v. Franzen*, 704 F.2d 954, 956-57 (7th Cir. 1983), cert. denied, 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983)........................................................................................................................................ 37

*Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1270 (7th Cir. 1983).................................................26, 36

*McGrath v. Fahey*, 126 Ill.2d 78, 127 Ill.Dec. 724, 533 N.E.2d 806, 809 (Ill. 1988)................................. 40

*Minnesota v. Dickerson*, 508 U.S. 366, 378, 113 S.Ct. 2130, 124 L.E.2d 334 (1993) ................................ 25

*Moffat v. Hartsell*, No. 08-3197-CV-S-DGK, 2009 WL 10705289, at *2 (W.D. Mo. Sept. 18, 2009) ...... 38

*Payne v. Stacy*, No. 18-CV-850, 2020 WL 886185, at *1 (E.D. Wis. Feb. 24, 2020) ................................. 31

*Public Finance Corp. v. Davis*, 66 Ill.2d 85, 90, 4 Ill.Dec. 652, 360 N.E.2d 765 (Ill. 1976)...................40, 41

*Riley v. California*, 573, U.S. 373, 134 S.Ct. 2473, 2482, 189 L.E.2d 430 (2014)...................................... 24

*Schmidt v. City of Lockport, Ill.*, 67 F. Supp. 2d 938, 944 (N.D. Ill. 1999) ................................................. 26

*Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.E.2d 917 (1968) .................................................27, 28

*Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001)....................................................................... 22

*Smith v. Daniels*, No. 01 C 4157, 2003 WL 1717635, at *7 (N.D. Ill. Mar. 28, 2003)............................... 33

*Stender v. Provident Life and Acc. Ins. Co.*, No. 98-C-1056, 2001 WL 289866 at *3 (N.D. Ill. Mar. 15, 2001)....... 22

*Stewart v. Rouse*, No. 1999 WL 102774, at *3-4 (N.D. Ill. Feb. 22, 1999) ............................................37, 39

*Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.E.2d 889 (1968) ........................................................... 25

*Thorner v. City of Harvey*, No. 97 C 4573, 1998 WL 355526, at *11 (N.D. Ill. June 24, 1998)................. 34

*United States v. Brown*, 188 F.3d 860, 864 (7th Cir. 1999)......................................................................... 25

*United States v. Brown*, 233 Fed.Appx. 564, 568 (7th Cir. 2007)................................................................ 31

*United States v. Di Re*, 332 U.S. 581, 68 S.Ct. 222, 92 L.E.2d 210 (1948) ................................................ 30

*United States v. Johnson*, 170 F.3d 708, 713 (7th Cir. 1999)....................................................................... 25

*United States v. Place*, 462 U.S. 696, 703, 103 S.Ct. 2637, 77 L.E.2d 110 (1983) .................................... 24

*United States v. Robinson*, 615 F.3d 804 (7th Cir. 2010) .................................................................30, 31, 36

*United States v. Thomas*, 512 F.3d 383 (7th Cir. 2008)............................................................................... 30

*Wilson v. City of Chicago*, 120 F.3d 681, 685 (7th Cir. 1997)..................................................................... 43

*Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.E.2d 818 (1999) ........................................... 36

*Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)..................................................................................33, 36

*Young v. Murphy*, 90 F.3d 1225, 1234 (7th Cir. 1996)................................................................................ 35

## <u>Statutes</u>

Ill.Rev.Stat. ch. 24, § 1–4–6 ......................................................................................................................... 39

**Rules**

Fed. R. Civ. P. 56(a)...................................................................................................................... 22
Fed. R. Civ. P. 56(c)...................................................................................................................... 23

# INTRODUCTION

> It was very feely toward my private areas. … Like he was more so rubbing than patting. … Like it was more so touching areas that I've never in my life known that a male officer could touch. … Like he repeatedly went to my butt constantly. … So the feeling of it is like he was trying to belittle me … A little rough with it as well. … He was reaching -- it was in between my butt cheeks … because I felt it. …I just recall my butt being fondled with … in a way that I've never been fondled with in the first place.

(Additional Material Facts ("AMF") ¶¶ 9, 10, 12, 13, 14, 15, 17).

These are just some of the words Plaintiff Wylesha Ayres ("Plaintiff" or "Ayres") used to describe the humiliating, embarrassing, and invasive pat-down search she was subjected to by Defendant Deputy Cory Christensen ("Defendant Christensen") on May 8, 2019. To make matters worse, Defendant Deputy Cody Floyd ("Defendant Floyd") just stood there as Ayres experienced this unwelcomed intrusion. What is harder to believe is that this occurred over something as small as an expired vehicle registration sticker.

On May 8, 2019, at approximately 10:00 p.m., Ayres was driving her girlfriend Letika Graham ("Graham") to work when she was pulled over by Defendant Christensen. There were two children present in the backseat of the vehicle at the time of the stop. After exiting his squad car, Defendant Christensen approached the passenger side door of Ayres's vehicle. Once he identified himself, Defendant Christensen stated the reason for pulling Ayres over: "The reason I stopped you, not a huge deal, your plates expired two months ago in March." (AMF ¶ 4). Defendant Christensen himself admitted that the reason for the stop was minor. He then went on to say, "I'm not going to give you a citation on it." (Undisputed Material Facts ("UMF") ¶ 12). He then asked Ayres and Graham for identification. Graham provided her identification and Ayres provided her name, date of birth, and current address. Defendant Christensen then returned to his squad car to

run Ayres's and Graham's information. However, on his way back to his squad car, he called for backup. Defendant Floyd then indicated over the radio that he would be right there to assist.

After about four minutes, Defendant Christensen exited his vehicle and approached the driver side door of Ayres's vehicle. Defendant Christensen proceeded to shine a light in Ayres's face and said, "Hey, Wylesha, hop out right quick. You're not under arrest, okay?" (UMF ¶ 30). Ayres followed Defendant Christensen's instructions and promptly exited her vehicle. Defendant Christensen then asked, "You don't have any weapons on your person, do you?", and Ayres quickly replied, "Nope." (UMF ¶ 31).

Then Defendant Christensen, in lieu of immediately patting down Ayres for officer safety, proceeded to explain to Ayres that he discovered her driver's license was expired as well (UMF ¶¶ 33, 34). Defendant Floyd was visibly standing near Ayres and Defendant Christensen during their conversation. Once the conversation concluded, Ayres attempted to walk back to her car, but Defendant Floyd told her to hang on a second.

Defendant Christensen then asked Ayres, "Would you mind if I just pat you down real quick? Is that okay?" (UMF ¶ 37). Ayres extended her arms outward to the side, and Defendant Christensen asked her to turn around. Defendant Christensen can then be seen on his body-worn camera feeling the hip area on Ayres's left side with his left hand.



Then, he moves his left hand to the center of Ayres's buttocks.



Defendant Christensen's fingers can be seen entering the crevice between Ayres's buttocks.



He then moves his left hand back to the hip area on Ayres's left side.



He then moves his hand back to Ayres's buttocks, sliding his hand across both parts of her butt.



Once more, Defendant Christensen reached his hand between Ayres's butt cheeks. Ayres then protested, "Woah, bro. Don't touch my butt, please." (AMF ¶ 18). Defendant Christensen then discontinued the pat-down, failing to check Ayres's legs or ankles for weapons to ensure "officer safety." The traffic stop ended soon after. However, approximately 20 minutes later, Defendant Floyd pulled Ayres's vehicle over again for the same traffic violation. Defendant Floyd laughed and admitted that Ayres's was just pulled over before.

Ultimately, Defendant Christensen conducted an illegal search of Plaintiff without probable cause or reasonable suspicion and conducted this search in a highly intrusive and unreasonable manner, in violation of the Fourth Amendment. Defendant Floyd failed to intervene as Defendant Christensen conducted this highly intrusive pat-down of Ayres's person. The impact of this pat-down search caused Plaintiff extreme emotional distress, including increased anxiety, embarrassment, humiliation, depression, and fear when she sees the police. Plaintiff also has had to see a counselor regularly since this incident. None of Defendants' contentions as to why they

are entitled to summary judgment are meritorious. Defendants' argument rests on a misstatement of the facts and an incorrect reading of the law. The fact that Defendants are attempting to minimize the highly intrusive nature of this pat-down is about as offensive as the pat-down itself. For the reasons explained below, Defendants' Motion for Summary Judgment should be denied.[1]

<strong><u>RESPONSE TO UNDISPUTED MATERIAL FACTS</u></strong>

## I.    UNDISPUTED MATERIAL FACTS

1.    Defendants Cory Christensen and Cody Floyd are deputies for the Champaign County Sheriff's Office who were on-shift during the afternoon/night hours of May 8, 2019. (Ex. C, Dep. of C. Christensen, 45); (Ex. D, Dep. of C. Floyd, 59–60).

2.    Plaintiff Wylesha Ayres is a female who was driving Letika Graham (another female) to work when she was pulled over by Deputy Christensen on May 8, 2019. (Ex. E, Dep. of W. Ayres, 31–32); (Ex. F, Dep. of L. Graham, 44:14–15, 65:6–9). Plaintiff's and Ms. Graham's two children (one an infant, the other seven years old) were in back seat of the car. (Ex. F, Dep. of L. Graham, 52:10–25).

4.    By May 8, 2019, Plaintiff had been patted down "a little less than a hundred" times, including at traffic stops. (Ex. E, 17:13–21, 18:10–13).

7.    At around 9:55pm on May 8, 2019, Deputy Cory Christensen pulled over a Jeep Patriot (hereinafter, "SUV") that Christensen identified as having an expired registration sticker on her license plate, in violation of the Illinois Motor Code. (Ex. C, Dep. of C. Christensen, 52–56); (Ex. A, at 21:56:02) (showing start of the traffic stop in question).

8.    Christensen activated his lights, and pulled the SUV over near Anthony Drive and Dobbins Drive in Champaign, Illinois. (Ex. C, 56:21–24, 167:16–19); (Ex. E, 61:8–15).

---

[1] Plaintiff does not contend that Defendant Christensen had probable cause to search Plaintiff's vehicle at the time of the traffic stop.

11.    At around 9:56pm, Christensen exited his squad car and approached the passenger side of the SUV. (Ex. A, time stamp 21:56:50–21:57:00).

12.    Christensen informed the driver and passenger (who he learned were Wylesha Ayres and Letika Graham, respectively) that he had stopped them for an expired registration sticker, was not going to issue a citation, but asked to see their driver's license. (Ex. A, time stamp 21:57:00–21:58:07). Both the passenger and the driver gave Christensen their licenses. (Id.).

13.    During this communication, the passenger (Letika Graham) told Officer Christensen that she was on her way to work. (Ex. C, 58:15–17); (Ex. A, 21:57:00–21:58:07).

20.    As Christensen got back into his squad car, he was advised that Deputy Cody Floyd (who was nearby) would respond to the scene. (Ex. C, 59:14–18); (Ex. D, 68:14–69:18).

21.    From the computer in his squad car, Christensen ran Ms. Ayres' and Graham's information "through the checks that I do on every traffic stop" — specifically, checking both individuals through the LEADS and ARMS databases. (Ex. C, 61:10–13). See also (id. at 61:16–63:3) & (Ex. H, ¶¶ 1–2) (generally describing LEADS and ARMS).

23.    From his searches of LEADS and ARMS (Ex. A, time stamp 21:58:10–22:02:51), Deputy Christensen obtained information indicating that Wylesha Ayres (the driver of the vehicle):

    a.    Had an expired driver's license. (Ex. C, 65:22–63:5).

25.    While Christensen was performing his routine searches, Deputy Cody Floyd arrived on scene, parked behind Christensen's squad car, and walked to the passenger side of Christensen's squad car. (Ex. B, start of video); (Ex. D, 71:18–72:2).

28.    Christensen put on a pair of gloves, exited his car, and approached the driver side of the SUV. (Ex. A, time stamp 22:02:51–22:03:35).

29. While approaching the SUV, Christensen told Floyd to stand back; Floyd stayed back by Christensen's vehicle. (Ex. A, time stamp 22:03:35–22:03:42); (Ex. D, 77:5–9).

30. When Christensen arrived at the SUV's driver-side door, he said to Ms. Ayres: "Hey Wylesha, hop out real quick. You're not under arrest, okay?" (Ex. A, time stamp 22:03:46–2:03:58). Christen went on to say he would "explain it to ya" after Ms. Ayres asked what was going on. (Ex. A, time stamp 22:03:46–2:03:58).

31. As Ms. Ayres exited the SUV, Christensen asked if she had any weapons on her; Ms. Ayres said she did not. (Ex. A, time stamp 22:04:01–22:04:05).

33. Christensen and Ayres walked to the back of the SUV, and stopped. (Ex. A, time stamp 22:04:05). "So here's the deal," Christensen said, and began to explain that Ms. Ayres's driver's license has been expired for over a year. (Id. at time stamp 22:04:05–22:04:34).

34. Christensen continued: "My second question is — and I'm not here to ruin your day or anything, okay — but when I walked up to the car I could just smell, just, the plain ol' smell of weed; were you smoking earlier or something?" (Ex. A, time stamp 22:04:34). Ms. Ayres responded "I had smoked earlier." (Id. at time stamp 22:04:42).

35. Christensen's training and personal experience told him that individuals who are drug dealers or drug users often have a weapon or item that could be used as a weapon on their person. (Ex. C, 198:12–199:3); (Ex. H, ¶5). See also (Ex. G, Dep. of N. Cook, 166:10–13) (agreeing there is a correlation between cannabis possession and violent crime).

36. Christensen then asked if Plaintiff had any drugs in the SUV that she was aware of. Plaintiff said she did not. (Ex. A, time stamp 22:04:44).

37. Christensen then asked: "Do you mind if I just pat you down real quick? Is that okay?" (Ex. A, time stamp 22:04:55–22:04:57).

38.     Before Christensen finished asking, Ms. Ayres extended her arms so they were parallel to the ground, and looked at the ground. (Ex. A, time stamp 22:04:55–22:04:57).

39.     Christensen asked Ms. Ayres to turn around so her back was towards him. She did. (Ex. A, time stamp 22:04:57).

50.     Deputy Christensen's hands did not touch or make contact with Ms. Ayres' genitalia. (Ex. E, 122:5–123:7); (Ex. C, 145:6–16).

51.     At the end of the search, Deputy Christensen told Ms. Ayres that "you're good." (Ex. A, time stamp 22:05:05).

52.     Ms. Ayres began to turn towards Christensen and said "Whoa, don't touch my butt." (Ex. A, time stamp 22:05:06).

53.     Prior to this statement, Ms. Ayres did not communicate to Deputy Christensen that his patdown search made her uncomfortable. (Ex. C, 186).

54.     Christensen responded that he was making sure Ms. Ayres did not have any weapons on her. (Ex. A, time stamp 22:05:06.).

55.     Christensen then turned and walked toward the passenger side of the SUV. (Ex. A, time stamp 22:05:10).

56.     After patting down Ms. Ayres, Deputy Christensen searched the SUV for cannabis. (Ex. C, 110:3–16).

57.     Christensen's search of the SUV is depicted on his body camera footage, and included searching the center console, inside a zipped-shut purse/wallet, the glove compartment, and a backpack that was in the SUV's trunk. (Ex. A, time stamp 22:05:58–22:07:45).

58.     Letika Graham and Wylesha Ayres were outside the car during the search, standing near Deputy Floyd, who was by Deputy Christensen's squad car, about 10 feet from the SUV. (Ex.

D, 86:1–9, 87:3–7, 89:10–13, 90:11–14). Ms. Graham and Ms. Ayres voiced their displeasure about Christensen's patdown search and automobile search. (Ex. D, 89–90); (Ex. B, time stamp 22:04:28–22:07:05).

59.     The search of the car lasted less than two minutes. (Ex. A, time stamp 22:05:58–22:07:45).

60.     After searching the SUV, Christensen, Ms. Ayres and Ms. Graham returned to their respective cars. (Ex. A, time stamp 22:07:45–22:08:07).

61.     Ultimately, Christensen wrote Plaintiff a traffic citation, and concluded the stop at 10:12pm. (Ex. A, time stamp 22:08:07–22:12:53).

62.     Plaintiff suffered no physical injuries as a result of the subject traffic stop. (Ex. E, 59:18–60:3).

## II.     DISPUTED MATERIAL FACTS

14.     During this communication, Deputy Christensen detected an odor coming from the SUV vehicle that he believed to be marijuana. (Ex. C, Dep. of C. Christensen, 59:19–60:3, 110:3–21). See also (Ex. E, Dep. of W. Ayres, 63:15–23) (agreeing car "could have" smelled like marijuana); (id. at 66:1–67:18) (Plaintiff testifying she smoked marijuana once a day in either her car or garage for the six months leading up to the subject traffic stop); (Ex. D, Dep. of C. Floyd, 73:14–24) (testifying he never approached Plaintiff's vehicle).

**RESPONSE:** Disputed. These statements are neither a full nor accurate recitation of the facts most favorable to the nonmoving party. When Defendant Christensen first approached the vehicle, he did not mention that he smelled the odor of marijuana coming from the car. (Ex. A, timestamp 21:57:00 – 21:58:10; Ex. E, 131:16-22). Officers did not see either Plaintiff or Graham smoking marijuana or anything resembling marijuana. (Ex. C, 111:2-20; Ex. F, 112:9-14). No marijuana was ever recovered, either from the occupants of the vehicle or inside the vehicle. *Id.*

16.     Deputy Christensen then returned to his car with the driver's and passenger's licenses. (Ex. A, time stamp 21:58:08–21:58:10). On the way back, Christensen asked for a second

officer to come to the scene so Christensen could search the SUV for cannabis. (Id.); (Ex. C, 59:1–60:3).

**RESPONSE:** Disputed. These statements are neither a full nor accurate recitation of the facts most favorable to the nonmoving party. Defendant Christensen did not radio that he needed a second officer to conduct a search for cannabis. Defendant Christensen can be heard stating, "PC search" without any mention of cannabis. (Ex. A, time stamp 21:58:08–21:58:10; Ex. C, 59:1-13)

18. In Christensen's experience, it typically took two hours to obtain a warrant at night, after the courthouse has closed. (Ex. H, ¶7).

**RESPONSE:** Undisputed as to what may be Christensen's experience when obtaining warrants, disputed because this statement is neither a full nor accurate recitation of the facts most favorable to the nonmoving party. Defendant Christensen made no attempts to obtain a warrant the night of the traffic stop. (Ex. A).

19. Christensen knew that no female Sheriff's deputies were presently on-call. (Ex. C, 190:12–25).

**RESPONSE:** Undisputed as to citation, disputed because this statement is neither a full nor accurate recitation of the facts most favorable to the nonmoving party. Defendant Christensen made no attempts at the time of the traffic stop to contact female Sheriff's deputies. (Ex. C, 93:13-16; 191:1-4).

26. From the driver seat of his squad car, Christensen informed Floyd that he (Christensen) had smelled marijuana in the SUV, that Ms. Ayres was reported to be a gang member, and that Christensen intended to have Ms. Ayres and Ms. Graham leave the vehicle so he could search it. (Ex. A, time stamp 21:01:26–22:01:45); (Ex. D, 72:24–73:13).

**RESPONSE:** Undisputed as to citation, disputed because this statement is neither a full nor accurate recitation of the facts most favorable to the nonmoving party. Plaintiff is not a gang member and has never been in a gang. (Ex. E, 127:1-10).

27. Christensen testified he limited the eventual patdown of Ms. Ayres and his search of the SUV to the actions he believed was necessary to accomplish his purpose, so as not to prolong the stop and further keep Ms. Graham from getting to work. (Ex. C, 116:18–24, 181–182).

**RESPONSE:** Undisputed as to citation, disputed as this statement is neither a full nor accurate recitation of the facts most favorable to the nonmoving party. Defendant Christensen's pat-down in which he inserted his fingers in between Plaintiff's buttocks was not necessary to check for weapons. (Ex. E, 86:23-87:3, 89:8-18; 94:13-16; 98:3-5).

32. Ms. Ayres was wearing jogging pants that Christensen perceived as "baggy" around the waist/back-pocket area, and were loose enough that he could not rule out that Ms. Ayres had a weapon or item that could be used as on weapon on her by sight alone. (Ex. F, Dep. of L. Graham, 43:20–44:3) ("jogging pants"); (Ex. C, 99:20–100:15, 142:21–143:5); (Ex. H, ¶5). See also (Ex. D, 80:6–19) (testifying Plaintiff's pants appeared to in "loose fitting pants"); (Ex. A, time stamp 22:03:46–2:03:58).

**RESPONSE:** Undisputed as to citation, disputed as this statement is neither a full nor accurate recitation of the facts most favorable to the nonmoving party. Plaintiff's pants were not baggy or sagging. (Ex. E, 101:15-18; 102:3-4).

40. Christensen patted the outside of Ms. Ayres' waistband area and pant pockets with his gloved hands. (Ex. A, time stamp 22:04:59–22:05:06).

**RESPONSE:** Disputed. This statement is neither a full nor accurate recitation of the facts most favorable to the nonmoving party. Defendant Christensen repeatedly rubbed, groped, and fondled Plaintiff's buttocks in a rough manner. (Ex. E, 76:4, 81:16-19, 87:1-8, 89:1, 92:3-10, 96:21-25). Defendant Christensen swiped across Plaintiff's buttocks, then ran his hand across both parts of her buttocks, and then he reached in between her buttocks. (Ex. E, 86:23-87:3, 89:8-18; 94:13-16; 98:3-5).

42. During the search, Deputy Floyd could was positioned such that he could not see what (if anything) Deputy Christensen's hands were doing as he searched Ms. Ayres' rear waistband/backside. (Ex. D, 78:21–79:7, 85:6–19).

**RESPONSE:** Disputed. This statement is neither a full nor accurate recitation of the facts most favorable to the nonmoving party. Defendant could see part of the search, including the search of Plaintiff's waistline. (Ex. D, 78:24-25, 80:22-81:1). Furthermore, Defendant Floyd was not doing anything and was standing within 10 feet of Defendant Christensen and Plaintiff during the entirety of the search. (Ex. D, 135:2-20). Moreover, Deputy Floyd was positioned where he had a clear view of what Deputy Christensen's hands were doing as he searched Ayres as can be seen by Floyd's body camera footage. (Ex. B, time stamp 22:04:59-22:05:06).

44.     During the search, Christensen testified that he focused on areas where his experience and training informed him there was most likely to be a weapon of some fashion: the pant waistband, pockets, and areas of the pants where a weapon could fall if initially tucked in a waistband. (Ex. C, 100:2–11, 101:1–6, 102:12–18, 133, 135:1–136:2, 140:21–141:2, 141:7–19, 143–145, 179:11–180:16); see also (Ex. H, ¶5) (identifying potential weapons).

**RESPONSE:** Undisputed as to citation, disputed as this statement is neither a full nor accurate recitation of the facts most favorable to the nonmoving party. Defendant Christensen repeatedly rubbed, groped, and fondled Plaintiff's buttocks in a rough manner. (Ex. E, 76:4, 81:16-19, 87:1-8, 89:1, 92:3-10, 96:21-25). Defendant Christensen swiped across Plaintiff's buttocks, then ran his hand across both parts of her buttocks, and then he reached in between her buttocks. (Ex. A, time stamp 22:04:59-22:05:06; Ex. E, 86:23-87:3, 89:8-18; 94:13-16; 98:3-5).

45.     During the search, Christensen's inner-hands were facing towards plaintiff, and his fingers were closed, akin to a "high five" hand gesture. (Ex. C, 102–103).

**RESPONSE:** Disputed. This statement is neither a full nor accurate recitation of the facts most favorable to the nonmoving party. Defendant Christensen swiped across Plaintiff's buttocks, then ran his hand across both parts of her buttocks, and then he reached in between her buttocks. (Ex. A, time stamp 22:04:59-22:05:06; Ex. E, 86:23-87:3, 89:8-18; 94:13-16; 98:3-5). Plaintiff could feel Defendant Christensen's fingers in between her buttocks. (Ex. E, 97:18-24).

46.     Christensen testified he used the technique he did because it improved his ability to feel a small object (such as a weapon or item that could be used as a weapon) on someone's person. (Ex. C, 103:20–24); (Ex. H, ¶5).

**RESPONSE:** Disputed. This statement is neither a full nor accurate recitation of the facts most favorable to the nonmoving party. No weapons were recovered on Plaintiff's person.

47.     During the patdown search, Christensen ran his hands up Plaintiff's inner thighs, but stopped short of touching where Plaintiff's inner thighs would connect to her crotch area. (Ex. C, 101:24–102:5); (Ex. D, 144:20–145:5).

**RESPONSE:** Disputed. This statement is neither a full nor accurate recitation of the facts most favorable to the nonmoving party. Defendant Christensen repeatedly rubbed, groped, and fondled Plaintiff's buttocks in a rough manner. (Ex. E, 76:4, 81:16-19, 87:1-8, 89:1, 92:3-10, 96:21-25). Defendant Christensen swiped across Plaintiff's buttocks, then ran his hand across both parts of

her buttocks, and then he reached in between her buttocks. (Ex. A, time stamp 22:04:59-22:05:06; Ex. E, 86:23-87:3, 89:8-18; 94:13-16; 98:3-5).

48.     During the patdown search, Christensen also searched a loose-fitting "web" of pant fabric that appeared to be loosely hanging down from Ms. Ayres' buttocks, and which included a portion of her back pant pockets. (Ex. C, 142:21–143:12).

**RESPONSE:** Disputed. This statement is neither a full nor accurate recitation of the facts most favorable to the nonmoving party. Defendant Christensen repeatedly rubbed, groped, and fondled Plaintiff's buttocks in a rough manner. (Ex. E, 76:4, 81:16-19, 87:1-8, 89:1, 92:3-10, 96:21-25). Defendant Christensen swiped across Plaintiff's buttocks, then ran his hand across both parts of her buttocks, and then he reached in between her buttocks. (Ex. A, time stamp 22:04:59-22:05:06; Ex. E, 86:23-87:3, 89:8-18; 94:13-16; 98:3-5).

### III.     UNDISPUTED IMMATERIAL FACTS

3.     On May 8, 2019, Plaintiff was 27 years old, and had completed her education up to the 11th grade. (Ex. E, 6:22–25); (Ex. I, Interog. Answers of W. Ayres, #1) (listing date of birth).

**RESPONSE:** Undisputed; however, this statement is immaterial because Plaintiff's age is irrelevant to the claims and defenses brought in this matter.

5.     By May 8, 2019, Plaintiff had been convicted of robbery and burglary. (Ex. E, 14:20–15:21).

**RESPONSE:** Undisputed; however, this statement is immaterial because Plaintiff's prior convictions are irrelevant to the claims and defenses brought in this matter.

6.     Before the subject incident, neither Christensen nor Floyd had ever interacted with Plaintiff. (Ex. C, 48:23–25); (Ex. D, 66:20–67:12).

**RESPONSE:** Undisputed; however, this statement is immaterial because Defendants lack of prior interactions with Plaintiff is irrelevant to the claims and defenses brought in this matter.

9.     The area where the stop occurred is known as a high-crime area within the Champaign County Sheriff's Office, and Christensen personally knew the area as a significant location for gun violence and narcotics distribution. (Ex. C, 167–171); (Ex. D, 122–125).

**RESPONSE:** Undisputed as to how Defendant Christensen chooses to define the area where the traffic stop occurred; however, this statement is immaterial because Defendants' belief that the area of the traffic stop is a "high-crime area" is irrelevant to the claims and defenses brought in this matter.

10.     During the traffic stop, it was dark out, (see generally Ex. A & B), which Deputy Christensen's experience told him was less safe than had the stop occurred earlier in the day. (Ex. C, 172:10–23).

**RESPONSE:** Undisputed; however, this statement is immaterial because the lighting in the area at the time of the traffic stop is irrelevant to the claims and defenses brought in this matter.

15.     Marijuana possession (outside of possession of small amounts or medical uses) was illegal in Illinois at the time of the subject traffic stop, and even possession of medical marijuana was illegal in a car unless the marijuana was in a sealed, tamper-evidence medical cannabis container. See 625 ILCS 5/11-502.1 (effective Jan. 1, 2014) (making it a Class A misdemeanor for a medical-marijuana licensee to have marijuana in a car unless in a specific sealed contained); 720 ILCS 550/4 (LEXIS 2019) (barring possession; amended Dec. 4, 2019 to exempt cannabis issues covered by the Cannabis Regulation and Tax Act (410 ILCS 705 et seq.) and the Industrial Hemp Act (505 ILCS 89 et seq.), the former of which legalized non-medical possession for individuals over age 21, effective until January 1, 2020)). See also 401 ILCS 705/10-5(a)(1) (legalizing certain possession of marijuana "[b]eginning January 1, 2020").

**RESPONSE:** Undisputed; however, this statement is immaterial because Defendants never recovered marijuana from Plaintiff's vehicle or person during the traffic stop at issue, and so this statement has no bearing on the claims and defenses brought in this matter.

17.     In Christensen's experience and training, he has learned that individuals who possess illegal drugs or weapons on their person will often try to discard, hide, or destroy those items if given an opportunity to do so, especially if the suspect is able to leave the scene where they are interacting with (and being watched by) law enforcement. (Ex. H, ¶6).

**RESPONSE:** Undisputed as to what Defendant Christensen may believe; however, this statement is immaterial because Defendants never recovered marijuana or weapons from Plaintiff's vehicle or person during the traffic stop at issue. Furthermore, this statement is immaterial because Plaintiff did not flee the scene when interacting with Defendants.

22. In Christensen's experience, ARMS and LEADS were reliable sources of information that he could trust the accuracy of. (Ex. C, 165:20–166:4, 166:22–2).

**RESPONSE:** Undisputed; however, this statement is immaterial because Defendants belief as to the reliability of ARMS and LEADS has no bearing on the claims and defenses brought in this matter.

23. From his searches of LEADS and ARMS (Ex. A, time stamp 21:58:10–22:02:51), Deputy Christensen obtained information indicating that Wylesha Ayres (the driver of the vehicle):

    b. Was not licensed to use medical marijuana. (Ex. C, 185:6–15).

    c. Had been arrested numerous times, and had some criminal convictions, including

    d. for a robbery. (Ex. C, 66:6–8 & 68:22–69:8).

    e. Was documented by the City of Urbana's police department as being a gang

    f. member. (Ex. C, 81:13–23).

    g. Had a previous contact with the City of Champaign's police department, wherein

    h. Wylesha had been in a vehicle with two guns inside, one of which was found to

    i. be stolen. (Ex. C, 76:7–22, 77:13–78:2).

    j. f. In the aforementioned City of Champaign incident, the vehicle in question was

    k. driven by one Quantrell Ayres, an individual known to Christensen to be a

    l. violent/dangerous criminal and suspected drug dealer who shared Wylesha

    m. Ayres' last name and was involved in a drug-related shooting. (Ex. C, 79:6–15,

    n. 98:7–8, 173:13–22, 175:12–176:14); (Ex. H, ¶3).

**RESPONSE:** Undisputed; however, these statements are immaterial because (1) Plaintiff's prior interactions with the Champaign Police Department have no bearing on the claims or defenses

brought in this matter; and (2) Defendants never recovered marijuana or weapons from Plaintiff's vehicle or person during the traffic stop at issue.

24. Christensen's search did not reveal any alerts about Letika Graham. (Ex. C, 64:19–65:12).

**RESPONSE:** Undisputed; however this statement is immaterial because the lack of "alerts" regarding Letika Graham have no bearing on the claims and defenses brought in this matter.

41. The patdown search lasted approximately seven seconds. (Ex. A, time stamp 22:04:59–22:05:06).

**RESPONSE:** Undisputed; however, this statement is immaterial because the time length of the pat-down search does not negate the intrusiveness of the search.

43. Deputy Floyd had no reason to suspect that Deputy Christensen would perform an improper patdown search. (Ex. D, Dep. of C. Floyd, 134:5–135:3).

**RESPONSE:** Undisputed as to what Defendant Floyd had reason to suspect; however, this statement is immaterial because what Defendant Floyd had reason to believe Defendant Christensen would do has no bearing on the claims and defenses brought in this matter.

49. Christensen searched this "web" area because he had personally found weapons (including brass knuckles) in this portion of an individual's pants before May 8, 2019. (Ex. C, 143:13–144:10); see also (id. at 144:20–145:5) (agreeing weapons may fall from a suspect's waistband and can "catch[]" in the web of pant fabric between the suspect's legs); (Ex. H, ¶5) (identifying potential weapons or weapons-like objects).

**RESPONSE:** Undisputed as to what Defendant Christensen may have found in that area before; however, this statement is immaterial because Defendant Christensen's reasoning for why he searched an area that is not of consequence has no bearing on the claims and defenses in this matter.

## IV. ADDITIONAL MATERIAL FACTS

1. When Defendant Christensen first approached Plaintiff's vehicle, he never said to Plaintiff that he smelled marijuana coming from the car. (Ex. A, timestamp 21:57:00-21:58:10; Ex. E, 131:16-22).

2.      Officers did not see either Plaintiff or Graham smoking marijuana or anything resembling marijuana. (Ex. C, 111:2-20; Ex. F, 112:9-14).

3.      No marijuana was ever recovered, either from the occupants of the vehicle or inside the vehicle. (Ex. C, 111:2-20; Ex. F, 112:9-14).

4.      Once Defendant Christensen approached the passenger side door of Plaintiff's vehicle, he said, "The reason I stopped you, not a huge deal, your plates expired two months ago in March." (Ex. A, timestamp 21:57:00 –21:57:06).

5.      Defendant Christensen decided to search Plaintiff for officer safety. (Ex. C, 66:11-15, 93:13-16).

6.      Defendant Christensen did not request the presence of a female officer to conduct the pat-down search on Plaintiff. (Ex. C, 96:16-97:1; 191:1-4). Defendant Floyd also did not request the presence of a female officer at the scene. (Ex. C, 97:2-5).

7.      Plaintiff was not wearing baggy pants. (Ex. E, 101:15-18).

8.      Plaintiff's pants were not sagging. (Ex. E, 102:3-4).

9.      Defendant Christensen's pat-down of Plaintiff was very feel toward her private areas. (Ex. E, 75:25).

10.     Defendant Christensen was more so rubbing than patting Plaintiff's body. (Ex. E, 76:4).

11.     Defendant Christensen's pat-down of Plaintiff felt more like a grope. He was groping Plaintiff instead of patting her down. (Ex. E, 92:3-10).

12.     Defendant Christensen fondled Plaintiff's buttocks in a way she never experienced before. (Ex. E, 81:16-19; 96:21-25).

13.     Defendant Christensen touched areas of Plaintiff's body that she never knew in her life male officers could touch. (Ex. E, 86:15-20).

14.     Defendant Christensen repeatedly touched Plaintiff's buttocks. (Ex. E, 87:1-8; 89:1).

15.     Defendant Christensen swiped across Plaintiff's buttocks, then ran his hand across both parts of her buttocks, and then he reached in between her buttocks. (Ex. E, 86:23-87:3, 89:8-18; 94:13-16; 98:3-5).

16.     Plaintiff could feel Defendant Christensen's fingers in between her buttocks. (Ex. E, 97:18-24).

17.     Defendant Christensen was rough by the way he was grabbing her during the pat-down. (Ex. E, 90:7-11).

18.     After Defendant Christensen touched in between Plaintiff's buttocks, Plaintiff told him "Woah, bro. Don't touch my butt, please." (Ex. A, timestamp 22:05:04-22:05:08; Ex. E, 87:18-23).

19.     Plaintiff then walked off regardless of what Defendant Christensen had to say because he did too much during the pat-down. (Ex. E, 102:23-24).

20.     Defendant Christensen did not find any weapons or drugs on Plaintiff's person or in her vehicle. (Ex. C, 111:5-11, 112:4-15, 113:5-114:3).

21.     Defendant Christensen did not search Plaintiff's chest area, arms, back, lower legs, or under her armpits. (Ex. E, 76:13-18; Ex. C, 100:2-11).

22.     Plaintiff felt that Defendant Christensen was trying to belittle her as opposed to actually trying to search her. (Ex. E, 89:14-17).

23.     Deputy Floyd was positioned where he had a clear view of what Deputy Christensen's hands were doing as he searched Ayres as can be seen by Floyd's body camera footage. (Ex. B, timestamp 22:04:59-22:05:06).

24.     Defendant Floyd was standing in the vicinity of Defendant Christensen's front passenger headlight. (Ex. C, 92:5-8).

25.     Defendant Floyd was not too far away, less than 10 feet away when the pat-down search occurred. He was just standing there, not doing anything else, during the pat-down search. (Ex. E, 135:2-20).

26.     Defendant Floyd witnessed part of the search. (Ex. D, 78:24-25). Defendant Floyd saw Defendant Christensen search Plaintiff's waistline. (Ex. D, 80:22-81:1).

27.     Defendant Floyd testified that he could not recall if he saw Defendant Christensen search anywhere other than Plaintiff's waistband. (Ex. D, 81:25-82:2).

28.     Defendant Floyd conducted a second traffic stop on Plaintiff's vehicle approximately 20 minutes after the first traffic stop. (Ex. D, 100:1-24; Ex. E, 130:10-17).

29.     Defendant Floyd pulled Plaintiff's vehicle over for a second time for the same traffic violation as before. (Ex. D, 100:1-24).

30.     During the second traffic stop, Defendant Floyd laughed and acknowledged that he already pulled Plaintiff over. (Ex. E, 130:24-131:1).

31.     The video of the pat-down search was published in an online news article. (Ex. F, 7:13-8:2; Ex. E, 35:13-36:3).

32.     The pat-down made Plaintiff feel violated and really harassed. (Ex. F, 68:21-22; 83:20-84:1). Plaintiff felt really low and punched holes in her walls as a result. (Ex. E, 138:1-8; 140:23).

33.     Plaintiff cries to her girlfriend Letika Graham about the pat-down search. (Ex. F, 68:2).

34.     Since the search, Plaintiff's mood has changed. Plaintiff is more on edge. Plaintiff gets jumpy, frantic, and worried at the sight of police that something's going to happen to her. (Ex. F, 83:9-12).

35.     Plaintiff sees a mental health counselor approximately once a week as a result of this incident. (Ex. E, 132:9-14; 133:15-20).

36.     Joseph J. Blaettler have over 33 years of law enforcement and criminal justice experience, training, and education in the field of investigations, supervision, procedures, and operations. (Ex. J, 1).

37.     A visual inspection should be used in lieu of a pat-down when conducting a cross-gender search. (Ex. J, 30).

38.     Searches utilizing finger manipulation or palm touching should be avoided whenever possible in favor of a search utilizing the back of a stiff, bladed hand. (Ex. J, 30).

39.     The search of a female by a male officer requires special care to avoid unnecessarily invading the private areas. (Ex. J, 31).

40.     It is Champaign County Sherriff's Office policy that a male deputy should request a female deputy to perform a search on a female person. (Ex. D, 53:14-17; Ex. G, 71:20-72:1).

41.     It is Champaign County Sherriff's Office policy that once a deputy of the opposite sex of a subject makes reasonable attempts to locate a deputy of the same sex to conduct a pat-down search of the subject, the deputy must then report the attempts made to locate a same-sex deputy and whether the deputy located a same-sex deputy to conduct the pat-down search.  (Ex. G, 71:16-72:18).

42.     Defendant Christensen did not document the traffic stop in any formal written report (Ex. C, 120:21-23).

43.     Defendant Christensen is not aware of the Champaign County Sherriff's Office policy requiring him to document reasonable attempts made to locate a same-sex deputy of the subject of the pat-down search. (Ex. C, 121:3-6).

## STANDARD OF LAW

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.E.2d 265 (1986). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Defendants bear a heavy burden on summary judgment as it is a drastic and extraordinary remedy that must only be granted where the "movant's right to judgment as a matter of law is absolutely clear and free from doubt." *Stender v. Provident Life and Acc. Ins. Co.*, No. 98-C-1056, 2001 WL 289866 at *3 (N.D. Ill. Mar. 15, 2001) (Guzman, J.).

The facts presented are to be construed in a light most favorable to the nonmoving party. *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001). On a motion for summary judgment, the court must draw "all reasonable inferences from undisputed facts in favor of the nonmoving party and [views] the disputed evidence in the light most favorable to the nonmoving party." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law." Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 322. When a material fact is contested, the court is precluded from granting summary judgment. *Casey v. Uddeholm Corp.*, 32 F.3d 1094, 1098 (7th Cir. 1994) (summary judgment reversed where district court impermissibly resolved contested issue of material fact on motion for summary judgment).

As detailed below, this case is replete with genuine and material questions of fact that preclude granting summary judgment in Defendants' favor.

## ARGUMENT

### I. The Manner of Defendant Christensen's Pat-Down Search of Plaintiff Was Highly Intrusive and Unreasonable in Violation of the Fourth Amendment

The fundamental question of fact at issue in this case is whether Defendant Christensen's pat-down search of Ayres was highly intrusive such that his conduct violated the Fourth Amendment. Defendant Christensen's pat-down was not a reasonable intrusion, but an inappropriate, embarrassing and ultimately degrading search of her person.

Yet, Defendants contend that this is a case about an "unremarkable," "palms-in" pat-down search of Ms. Ayres's "back pant pockets and inner thighs." (Defendants' Motion for Summary Judgment, Dkt. #53 ("Def.' Mot.") at 30). Not only does this summary inaccurately describe the intrusive search conducted by Defendant Christensen, but it also misses the forest for the trees. There may have been a point in which Defendant Christensen had his palms in while patting Plaintiff's back pant pockets. However, looking at the pat-down search as a whole, there were multiple moments in which Defendant Christensen crossed the line, invaded Plaintiff's private area, and consequently violating her constitutional rights.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. As the Supreme Court has made clear, "the ultimate touchstone of the Fourth Amendment is

'reasonableness.'" *Riley v. California*, 573 U.S. 373, 134 S.Ct. 2473, 2482, 189 L.E.2d 430 (2014). To determine whether a search is reasonable, a court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703, 103 S.Ct. 2637, 77 L.E.2d 110 (1983).

When conducting a *Terry* stop, an officer may stop an individual for brief questioning and perform a warrantless pat-down search of the outer clothing of the stopped individual. *United States v. Johnson*, 170 F.3d 708, 713 (7th Cir. 1999). "To justify a warrantless pat-down search without probable cause, the officer must also be able to point to specific and articulable facts indicating that the individual may be armed and present a risk of harm to the officer or to others." *United States v. Brown*, 188 F.3d 860, 864 (7th Cir. 1999) (citing *Johnson*, 170 F.3d at 713 (citations omitted)). An officer has reasonable suspicion that the detainee poses a danger if "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.E.2d 889 (1968).

Because "[t]he sole justification of the [pat-down] search in [such a] situation is the protection of the police officer and others nearby," it must therefore be "confined in scope to an intrusion reasonably designed to discover [weapons]." *Terry*, 392 U.S. at 29. An officer is not justified in conducting a general exploratory search for evidence under the guise of a *Terry* stop-and-frisk. *See Minnesota v. Dickerson*, 508 U.S. 366, 378, 113 S.Ct. 2130, 124 L.E.2d 334 (1993). While an officer may be permitted to conduct a full search of a person for weapons and evidence, "a full search is only the maximum intensity necessary to determine if the arrestee has any weapons or evidence." *DuFour-Dowell v. Cogger*, 969 F. Supp. 1107, 1120 (N.D. Ill. 1997) (citing *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1270 (7th Cir. 1983)). "Directly touching genitals,

breasts, or buttocks is clearly more intrusive than observing such body parts unclothed." *Anderson v. Cornejo*, 199 F.R.D. 228, 257 (N.D. Ill. 2000) (citing *Schmidt v. City of Lockport, Ill.*, 67 F. Supp. 2d 938, 944 (N.D. Ill. 1999)).

First, the justification to pat down Plaintiff in the first place is problematic. Defendant Christensen did not suspect that Plaintiff was armed and dangerous. After asking Plaintiff to get out of the car, Defendant Christensen immediately asked Plaintiff if she was armed, to which she replied no. (UMF ¶ 31). Therefore, any alleged fear Defendant Christensen may have had that Plaintiff was armed or dangerous was dispelled. Proof that any fears he may have had dissipated is the fact that he proceeded to have a conversation with Plaintiff about renewing her license rather than immediately patting her down for his "safety." (UMF ¶¶ 33, 34, 36). Furthermore, Defendant Christensen only "patted down" Plaintiff's left hip area and buttocks. This surely does not include the areas where weapons are typically concealed on a person. Defendant Christensen was therefore not justified in conducting a pat-down search of Plaintiff for weapons.

Second, Plaintiff has not and is not stating that it is illegal for a male officer to pat down a female person. Defendants' assertion that this is the crux of Plaintiff's argument is disingenuous. However, both Champaign County Sheriff's Office Captain Shane Cook and Defendant Floyd have testified that it is Champaign County policy to make reasonable attempts to locate a female officer for a pat-down of a female person. (AMF ¶ 39). On the night of the traffic stop, neither Defendant Christensen nor Defendant Floyd (collectively "Defendant Officers") made any attempts to locate a female deputy to pat down Ayres. (AMF ¶ 6). Then, Defendant Christensen failed to document whether he made any attempts to locate a female deputy. (AMF ¶ 41). These failures to locate a female deputy and to document the attempt are clearly against Champaign

County Sheriff's Office policy. (AMF ¶¶ 39, 40). Even more alarmingly, Defendant Christensen is not aware of these policies. (AMF, ¶ 42).

In addition, the manner of Defendant Christensen searched Ms. Ayres makes his gender important to mention, seeing as a male officer touching a female person's private areas is an entirely different matter than a female officer doing the same. Even Defendants admit that opposite-sex pat-downs in a person's private areas can be "constitutionally problematic." (Def.' Mot. at 30).

Plaintiff is also not alleging that an officer having his "palms in" during a pat-down search, a search of "back pant pockets," or touching the "web" of loose fabric is a constitutional violation. Groping and fondling a woman's buttocks under the guise of a pat-down search for "officer safety" is. Defendant Christensen did not just pat down Plaintiff's back pockets or the "web" of her pants. He touched her buttocks multiple times and inserted his fingers into the crevice of her buttocks. (AMF ¶¶ 14, 15, 16). Defendants misstate the account Plaintiff actually gave at her deposition of the embarrassing moment she endured. Defendant Christensen put his fingers between Ayres's buttocks. (AMF ¶¶ 15, 16). Palms-in versus palms-out is therefore irrelevant here.

The Supreme Court case *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.E.2d 917 (1968) establishes that a pat-down search for officer safety does not allow the officer to go on a fishing expedition for evidence of a crime the officer thinks the person may be committing. In *Sibron*, a police officer stopped a person who he believed to be selling narcotics. *Id*. at 45. The officer said to Sibron, "You know what I am after[,]" and then reached into Sibron's pockets. *Id*. The court concluded that not only did the officer lack probable cause to arrest Sibron, but that the officer's search of Sibron's pockets for evidence of narcotics was also in violation of the Fourth Amendment. *Id*. at 62-63. The Court reasoned that the officer was conducting a *Terry stop*, and so

his subsequent search of Sibron was not in fear that Sibron was armed or dangerous warranting a pat-down search, but rather was a search for evidence of narcotics. *Id*. at 63-64. As such, the court held that the evidentiary search of Sibron was unconstitutional. *Id*. at 64. Important to note, the Court found that even if the search of Sibron was based on reasonable suspicion that he was armed, the search would still be unconstitutional because it "was not reasonably limited in scope to the accomplishment of the only goal which might have conceivably have justified its inception--the protection of the officer by disarming a potentially dangerous man." *Id*. at 65.

The reasoning in *Sibron* is easily applicable here. Defendant Christensen conducted a *Terry* stop when he pulled Plaintiff over for an expired license registration sticker. (UMF ¶ 7). When Defendant Christensen conducted the pat down search of Plaintiff, she was not under arrest. (UMF ¶ 30). Defendant Christensen searched Plaintiff on the baseless belief that she was armed and dangerous. (*See* Def. Mot. at 21 (Defendants argue Defendant Christensen had "a reasonable, articulable suspicion that Ms. Ayres posed a threat to his safety, and therefore the patdown is additionally justified by the doctrine articulated in *Terry v. Ohio*.")). Therefore, when conducting a pat-down search based on reasonable suspicion, Defendant Christensen was only permitted to pat Plaintiff down for weapons. Instead, Defendant Christensen exceeded the bounds of decency and touched Plaintiff's buttocks multiple times and inserted his fingers between her buttocks. (AMF ¶¶ 14, 15). Defendant Christensen did not insert his fingers between Plaintiff's buttocks in search for weapons. It would be both strange and quite difficult to hide a gun or the like in such area. It is plainly clear that Defendant Christensen searched the crack of Plaintiff's buttocks in the hopes of uncovering drugs, a search *Sibron* clearly establishes is unconstitutional.

Defendants also cannot argue that Defendant Christensen had probable cause to search Plaintiff based on the smell of marijuana. The factual situation in *Lessley v. City of Madison, Ind.*,

654 F. Supp. 2d 877 (S.D. Ind. 2009) bears a strong resemblance to this case. In *Lessley*, officers stopped the plaintiffs for a broken license plate light. *Id*. at 889. As an officer approached the vehicle, he smelled marijuana and conducted a search on the car. *Id*. Another officer patted down the pockets of the plaintiffs. *Id*. The plaintiffs were later strip searched at the police stations. *Id*. Plaintiffs brought suit alleging constitutional violations for the traffic stop and searches. *Id*. On summary judgment, the court held that the pat-down search of two of the plaintiffs' pockets was unconstitutional. *Id*. at 896. The court noted that the only indication that two of the plaintiffs had marijuana was based on the smell emanating from the car. *Id*. at 897. As a result, the court held "[t]he odor alone did not give the officers probable cause to search them." *Id*. at 897. Additionally, the court pointed out that probable cause to search a vehicle does not lend probable cause to search the occupants of the vehicle. *Id*. (citing *United States v. Di Re*, 332 U.S. 581, 68 S.Ct. 222, 92 L.E.2d 210 (1948)).

In this case, Defendants assert that Defendant Christensen had probable cause to search Plaintiff for marijuana on the sole basis that he could smell marijuana in the car. Just as the court held in *Lessley*, merely the smell of marijuana emanating from the vehicle does not establish probable cause for Defendant Christensen to search Plaintiff for marijuana. Oddly enough, Defendants cite to *Lessley* but seem to have missed the court's holding.

Defendants also cite multiple cases to support their argument that are easily distinguishable from the case at hand. *United States v. Robinson*, 615 F.3d 804 (7th Cir. 2010) involved a pat-down search in which 54 grams of crack cocaine were recovered, a recovery that was not made in this case, as no weapons or narcotics were found on Plaintiff's person. (AMF ¶ 20). *United States v. Thomas*, 512 F.3d 383 (7th Cir. 2008) is also inapposite as it involved a search incident to arrest. When conducting a search of a person incident to arrest, an officer is permitted to conduct a

"relatively extensive exploration of the person" (*Robinson*, 414 U.S. at 227), including a search of a person's private areas. *See United States v. Brown*, 233 Fed.Appx. 564, 568 (7th Cir. 2007). Here, however, it is undisputed that Plaintiff was not under arrest at the time the pat-down search was performed. (UMF ¶ 30). Defendant Christensen, therefore, did not have the legal right to exceed a customary pat-down search for weapons by inserting his fingers between Plaintiff's buttocks on a search for narcotics.

*Payne v. Stacy*, No. 18-CV-850, 2020 WL 886185, at *1 (E.D. Wis. Feb. 24, 2020) is also not controlling because the particularized search in that case involved a metal detector that touched the top of plaintiff's buttocks and took place in the corrections context. Defendant Christensen did not touch Plaintiff's buttocks with a metal detector or any other object of the like. He inserted his fingers in between her buttocks and repeatedly groped her buttocks until she moved away. (AMF ¶¶ 11, 15, 16).

Moreover, Defendant Christensen did not pat down Plaintiff's legs, ankles, back or chest - all obvious places where contraband or weapons could be concealed. (AMF ¶ 20). Rather, he specifically targeted Plaintiff's buttocks as a place to search. Once Plaintiff protested to Defendant Christensen not to touch her buttocks, he stopped the search. (AMF ¶ 19). If Defendant Christensen was indeed concerned over his safety or the safety of others, he would have completed the search, patting down the remaining parts of Plaintiff's body. Yet, he did not. The fact that Defendant Christensen put on gloves first does not minimize the intrusive nature of sticking his fingers in an area deemed private by the civilized world.

Additionally, Plaintiff's expert witness Joseph J. Blaettler unequivocally states in his report his opinion, held to a reasonable degree of certainty as a 33-year member of law enforcement, that Defendant Christensen's pat-down search of Plaintiff was improper because of the highly intrusive

method by which Defendant Christensen performed the search. (AMF ¶ 35; Ex. J). Specifically, Blaettler opined that a visual inspection would have been more appropriate in this circumstances and that a search utilizing fingers should have been avoided. (AMF ¶¶ 36, 37). Of course, Defendants dispute Blaettler's expert opinion on the basis that police policies "do not established the Fourth Amendment's requirements." (Def. Mot. at 31). Nevertheless, "the plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in [her] favor. If [the plaintiff] does so, there is a genuine issue of fact that requires a trial." *Anderson*, 477 U.S. at 257. The Seventh Circuit has allowed a police practices expert to testify to a jury regarding reasonable police procedures and departures from those procedures as long as the expert's opinions do not constitute legal conclusions. *See Jimenez v. City of Chicago*, 732 F.3d 710, 721-22 (7th Cir. 2013). As such, Blaettler's opinions should not be entirely disregarded as Defendants so wish.

Although Ayres may have consented to the search, the manner of the pat-down search of Ayres's person was patently unreasonable. Thus, Ayres was subject to an unreasonable search in violation of the Fourth Amendment. At a minimum, whether the manner of the pat-down search was unreasonable is a fact question best suited for a jury.

## II. Defendant Floyd Failed to Intervene During the Unreasonable Pat-Down Search Conducted by Defendant Christensen in Violation of the Fourth Amendment

Defendant Floyd argues that he is not liable for failing to intervene because (1) he did not see the pat-down search, and (2) he did not have an opportunity to intervene. (Def. Mot. at 34). Defendant Floyd's body worn camera establishes, at a minimum, that there is a genuine dispute of material fact as to what Defendant Floyd could see and whether he had the opportunity to intervene. (AMF ¶ 22).

A police officer is liable for failing to intervene when that officer observes or has reason to know that a constitutional violation is occurring and there was a realistic opportunity to intervene to prevent the violation from occurring. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994); *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). "Whether an officer has sufficient time to intervene or was capable of preventing the harm caused by the other officers is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibl[y] conclude otherwise." *Smith v. Daniels*, No. 01 C 4157, 2003 WL 1717635, at *7 (N.D. Ill. Mar. 28, 2003)(Guzman, J.).

As articulated above, Defendant Christensen violated Plaintiff's constitutional rights when he conducted the highly intrusive search of Plaintiff's buttocks. Therefore, Defendants' argument that there is no underlying constitutional violation for which Defendant Floyd failed to stop is simply untrue. Defendant Christensen's body-worn camera and Plaintiff's testimony plainly establish that Defendant Christensen's pat-down search was unreasonable and in violation of the Fourth Amendment.

Next, it is equally untrue for Defendants to assert that Defendant Floyd could not see the disturbing parts of the search or that he did not have sufficient opportunity to stop Defendant Christensen's misconduct. As can be seen on Defendant Floyd's body-worn camera, Defendant Floyd was standing right next to Defendant Christensen and Plaintiff during the pat-down search. (AMF ¶ 22). In fact, Defendant Floyd testified that he witnesses part of the search. (AMF ¶ 25). Furthermore, Plaintiff testified that Defendant Floyd was not too far away from her and Defendant Christensen during the pat-down, less than 10 feet away in fact. (AMF ¶ 24). There is no indication that Defendant Floyd stepped away at the point of the pat-down or was preoccupied with others tasks and he has not given any testimony to the contrary. (*Id.*).

Additionally, it is unequivocally clear that Defendant Christensen made multiple passes across and in between Plaintiff's buttocks. (AMF ¶¶ 14, 15, 16). Defendant Floyd's argument that he did not have sufficient opportunity to intervene may be persuasive if Defendant Christensen only touched Plaintiff's buttocks once, but there were multiple instances in which Defendant Floyd could have told Defendant Christensen to stop, or at a minimum, to move onto other areas that are more typically where weapons are stored. Defendant Floyd did neither.

Although this pat-down search may have been of short duration, that does not absolve Defendant Floyd of intervening when he witnesses a constitutional violation. *See, e.g., Thorner v. City of Harvey*, No. 97 c 4573, 1998 WL 355526, at *11 (N.D. Ill. June 24, 1998)(Coar, J.) (finding that a reasonable jury could find that an officer who had more than a split second to react to excessive force but less than a minute could have intervened to prevent the officer's misconduct, at least by telling the officer to stop). Ultimately, whether or not Defendant Floyd could see the intrusive pat-down search and/or whether he had enough time to intervene are questions of fact precluding summary judgment in Defendants' favor. Therefore, the court should deny Defendants' summary judgment motion as to Count II of Plaintiff's claims.

### III. Defendant Officers Are Not Entitled to Qualified Immunity

The multitude of material facts at issue in this case, discussed supra, preclude summary judgment. Nonetheless, as an alternative basis for obtaining summary judgment on Plaintiff's claims, Defendants assert that even if their conduct was unconstitutional, Defendant Officers are entitled to qualified immunity. Specifically, Defendant Officers argue that "it was not clearly established in May of 2019 that their conduct violated the Constitution." (Def. Mot. at 36). Once more, Defendants make a false assertion not grounded in the facts of this case or the law of this circuit.

The doctrine of qualified immunity insulates police officers from liability insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.E.2d 396 (1982). The Seventh Circuit has set out a two-part test to determine if qualified immunity is applicable: (1) whether the police officer's conduct constitutes a constitutional violation, and (2) whether the plaintiff has shown that the law was clearly established when the constitutional violation occurred. *Young v. Murphy*, 90 F.3d 1225, 1234 (7th Cir. 1996). However, to be established clearly, a plaintiff need not show that "the very action in question [have] previously been held unlawful." *Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.E.2d 818 (1999). Additionally, for a §1983 cause of action, such as the one here, the plaintiff must prove that the officer was acting under color of state law and that the officer's misconduct violated the plaintiff's rights under the Constitution. *See Yang*, 37 F.3d at 284 (citations omitted).

First, Defendants do not dispute that Defendant Officers were acting under color of state law at the time of the traffic stop in question. Second, as addressed above, Defendant Christensen violated Plaintiff's Fourth Amendment rights when he performed the intrusive and offensive pat-down search of Plaintiff, and Defendant Floyd violated Plaintiff's constitutional rights when he failed to intervene while this unreasonable pat-down search occurred. Yet, Defendant Officers argue that there was some uncertainty in the law that absolves them of liability under the doctrine of qualified immunity. Both Seventh Circuit case law and federal law around the country make clear that the constitutional violations at issue here were clearly established at the time Defendant Officers committed this misconduct.

It is a clear constitutional principle that police officers are not entitled to engage in "extreme or patently abusive" searches of a person. *Mary Beth G.*, 723 F.2d at 1270 (citing

*Robinson*, 414 U.S. at 236). Second, the Seventh Circuit has described a search pursuant to a *Terry* stop as "a simple frisk or pat-down, done outside the clothing, without any deliberate attempt to examine the 'genital-anal' areas." *Madyun v. Franzen*, 704 F.2d 954, 956-57 (7th Cir. 1983), cert. denied, 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983). Therefore, the manner by which Defendant Christensen patted Plaintiff down has been known to be inappropriate and unreasonable. *See, e.g., Stewart v. Rouse*, No. 1999 WL 102774, at *3-4 (N.D. Ill. Feb. 22, 1999); *DuFour-Dowell*, 969 F. Supp. at 1120 ; *Doe v. Calumet City, Ill.*, 754 F.Supp. 1211, 1218 (N.D. Ill. 1990) (noting "[d]eeply embedded in our culture … is the belief that people have a reasonable expectation not to be unclothed involuntarily, to be observed unclothed or to have their 'private' parts observed or *touched* by others.")(emphasis added).

In *Stewart*, the plaintiff brought suit against police officers after one of the officers aggressively groped her, grabbed her groin, stroked her buttocks, and fondled her, and the Defendants moved for summary judgment on the reasonableness of the pat-down search. No. 1999 WL 102774, at *3-4. The court held that a jury could find that the way in which the officer searched the plaintiff exceeded what is permitted under the law, denying the Defendants' motion for summary judgment. *Id*. at *5.

In *Madyun*, the court held that a pat-down search where the officer used both hands to feel along the plaintiff's buttocks and genital area was unreasonably intrusive. 704 F.2d at 940-43. In *DuFour-Dowell*, the court found that "a police officer of the opposite sex" was not reasonably justified in patting down an arrestee in her private areas, particularly because she was in a nightgown that revealed no weapons on her person. 969 F. Supp. at 1120. In this case, Ms. Ayres pants were not baggy. (AMF ¶ 7). She had on form-fitting sweatpants that easily revealed the existence, or lack thereof, of any weapons on her person as in *DuFour*. As well, in *Anderson v.*

*Cornejo*, 199 F.R.D. 228, 258 (N.D. Ill. 2000), the court found that the fondling of a traveler's genital area, breasts, or buttocks area even above the clothing during a pat-down would constitute an intrusive pat-down. Although *Anderson* occurred in the context of an airport, the intrusion is the same and fondling or groping of a person's buttocks in this manner is unlawful.

Other circuits have clearly established that the type of pat-down search conducted by Defendant Christensen constitutes a constitutional violation. *See, e.g., Moffat v. Hartsell*, No. 08-3197-CV-S-DGK, 2009 WL 10705289, at *2 (W.D. Mo. Sept. 18, 2009)(Kays, J.) ("An effective search for weapons or evidence could have been satisfied by a brief, back-handed pat-down search, such as the Defendant was trained to perform in such a situation. Conversely, the Plaintiff's interest against extended, unwanted sexual touching of a private area by a male police officer is quite high."); *Dickey v. United States*, 174 F. Supp. 3d 366, 371 (D.D.C. 2016)("any reasonable officer would have understood that, at the time Mr. Dickey was taken into custody, repeatedly fondling an individual's genitals incident to arrest would constitute a violation of that persons clearly established constitutional rights."); *Burgess v. Lowery*, 201 F.3d 942, 944 (7th Cir. 2000) ("Conversely, the absence of a Supreme Court or Seventh Circuit decision on point does not conclusively show the law is not clearly established. It may be that the existence of the right is so clear that the issue has never been litigated, or at least never discussed in a published appellate court decision.").

Moreover, as of May 8, 2019, it was clearly established that standing by as a person is subject to an unreasonable pat-down search constitutes a constitutional violation. *See Harrison v. City of Fort Wayne*, No. 17-cv-00419-SLC, 2020 WL 1536150, at *14 (N.D. Ind. Mar. 31, 2020)(Collins, Mag.) (denying summary judgment on the plaintiff's failure to intervene claim on the basis that a jury could find that detective across the parking lot and behind the squad car during

a pat-down search could have intervened). Thus, a reasonably jury could conclude that Defendant Floyd had sufficient opportunity to intervene and failed to do so.

Even if the court finds that there is not an identical factual scenario that clearly establishes these violations, whether Defendant Christensen inserted his fingers into Plaintiff's buttocks or merely conducted a "palms-in" pat-down of Plaintiff's back pockets as he falsely claims, and whether Defendant Floyd could "see" the pat-down or had an opportunity to intervene are questions of material fact precluding summary judgment. "If the key facts for resolving an issue of qualified immunity are … disputed … the court must deny summary judgment." *Stewart*, No. 1999 WL 102774 at *5 (citing *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996)). In conclusion, the court should deny Defendants' motion for summary judgment on the basis of qualified immunity.

## IV. Defendant Officers Caused Plaintiff Extreme Emotional Distress as a Result of Their Misconduct During the Pat-Down Search

There are very few things that could shock the conscious of a woman more than a man she does not know, dressed as an officer of the law, inserting his fingers between her buttocks, under the guise of a lawful pat-down search because of a mere traffic violation, but here we are. Defendants, however, stand on the belief that Defendant Christensen's misbehavior toward Ayres constituted "legitimate police work." (Def. Mot. at 38). There was nothing "legitimate" about the way in which Defendant Christensen touched Plaintiff. His misconduct caused Plaintiff to suffer severe emotional distress. Plaintiff's intentional infliction of emotional distress claim should therefore survive summary judgment.

To state a claim of intentional infliction of emotional distress, a plaintiff must prove (1) the defendant's conduct was extreme and outrageous, (2) the defendant either intended that the conduct would cause severe emotional distress or knew that there was a high probability that severe

emotional distress would result, and (3) the defendant's conduct did in fact cause severe emotional distress. *McGrath v. Fahey*, 126 Ill.2d 78, 127 Ill.Dec. 724, 533 N.E.2d 806, 809 (Ill. 1988) (citing *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 90, 4 Ill.Dec. 652, 360 N.E.2d 765 (Ill. 1976)).

Whether conduct is extreme and outrageous is determined using an objective standard based upon all of the facts and circumstances in a particular case. *Duffy v. Orlan Brook Condominium Owners' Ass'n*, 2012 IL App (1st) 113577, ¶ 35, 367 Ill.Dec. 341, 981 N.E.2d 1069. The nature of the defendant's conduct must be "so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community." *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill.2d 1, 21, 180 Ill.Dec. 307, 607 N.E.2d 201 (Ill. 1992).

Defendant Christensen's conduct on May 8, 2019 was extreme and outrageous. He did not pat down the obvious places on Ayres's body where weapons would typically be stored, but rather repeatedly touched only one area of Plaintiff's body, an area any person would consider extremely private. Sticking his fingers in between Plaintiff's buttocks is not in the category of "mere insult, indignities, threats, annoyances, petty oppressions or other trivialities." *Public Finance Corp.*, 66 at 89. There is nothing trivial about an officer employed to protect and serve invading the crevices of a person's private area.

In addition, there was no lawful justification for Defendant Christensen to stick his fingers between Plaintiff's buttock, hence why Defendant Christensen is trying to claim he did not do so, despite the clear video evidence. Defendant Christensen is now trying to backtrack from this offensive pat-down search because he knows such conduct of an officer is clearly outrageous and inappropriate, demonstrating that he knew there was a high probability that any person who would have to endure such a search would consequently develop severe emotional distress, including Plaintiff. Such an abuse of authority indeed exceeds all possible bounds of decency.

Furthermore, there is no question that Defendant Christensen's conduct caused Plaintiff severe emotional distress. Plaintiff testified that the video capturing Defendant Christensen's offensive touching was all over the news and is still available to watch on Champaign's News-Gazette website. (AMF ¶ 31). As a result of this incident, Plaintiff continuously sees a counselor approximately once a week to deal with the emotional trauma of this incident. (AMF ¶ 35).

Plaintiff described in her own words how this embarrassing and intrusive pat-down made her feel, "I had to stand there and let it happen and he is an official, and I've never been with a man in my life. … It made me feel low. As a woman, you know, I felt like they were trying to make a mockery of who I was, my character, my past. I just felt low of myself for a long time, low, low. Punched holes in my walls. I had like eight holes in my walls at home." (AMF ¶ 32). There is no question the severity of the emotional distress Plaintiff has endured as a result of this search. Thus, Plaintiff's intentional infliction of emotional distress claim should survive summary judgment.

## V.  Champaign County is Liable Under the Theory of *Respondeat Superior* for Plaintiff's State Law Claim of Intentional Infliction of Emotional Distress

Defendant Champaign County is liable under the theory of *respondeat superior* for Defendant Officers' tortious conduct that led to Plaintiff's severe emotional distress. For Illinois tort claims, "[t]here is no dispute that under the doctrine of *[r]espondeat superior* … a municipality may be held liable for the tortious acts of police officers acting in the scope of their employment." *Brown v. King*, 767 N.E.2d 357, 360 (Ill. App. Ct. 2001). A local public entity would be directed to pay a tort judgment or settlement of a liable employee acting in the scope of his duty. *See, e.g., Wilson v. City of Chicago*, 120 F.3d 681, 685 (7th Cir. 1997).

There is sufficient evidence to support Plaintiff's state law claim for intentional infliction of emotional distress, or at the very least evidence that creates a genuine issue of material fact, as

explained above. Therefore, Defendant Champaign County is not entitled to summary judgment on Plaintiff's *respondeat superior* claim.

## VI. Defendants Should Not Be Granted Summary Judgment on Plaintiff's Indemnification Claim

In Illinois, a municipality has an obligation to indemnify its police officers for judgments entered against them provided the officers were engaged in the performance of their duties as officers. Ill.Rev.Stat. ch. 24, § 1–4–6. In this case, it is undisputed that Defendants Officers were engaged in the performance of their duties as officers when the misconduct outlined above occurred. It is also plainly clear that a reasonable jury could return a verdict for Plaintiff on each of her claims. Accordingly, Defendants' motion for summary judgment for Plaintiff's indemnification claim should be denied.

<u>CONCLUSION</u>

WHEREFORE, Plaintiff Wylesha Ayres respectfully requests that this Court deny Defendants' Motion for Summary Judgment, and provide such other relief as is just and to which she may be entitled under the circumstances.

Dated: December 18, 2020

Respectfully submitted,

By:     */s/ Natalie Y. Adeeyo*
        Natalie Y. Adeeyo, Att. No. 6323542

Shneur Z. Nathan
Avi T. Kamionkski
Natalie Y. Adeeyo
Matthew C. Mc Carter
Nathan & Kamionski LLP
33 West Monroe, Suite 1830
Chicago, IL 60603
(312) 612-2255

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I, Natalie Adeeyo, an attorney, hereby certify that on this day, the 18th day of December 2020, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to call counsel of record.

*/s/ Natalie Y. Adeeyo*