5590-21
KEF/BJV/ms/tlp

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

WYLESHA AYRES,                                    )
                                                  )
      Plaintiff,                              )
                                                  )
v.                                                )          No.:     19-2148
                                                  )
SHERIFF DEPUTIES CODY CHRISTENSEN and             )
CORY FLOYD, CHAMPAIGN COUNTY SHERIFF'S            )
OFFICE, and CHAMPAIGN COUNTY, ILLINOIS,           )
                                                  )
      Defendants.                             )

## **REPLY TO RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

NOW COME the Defendants, CORY CHRISTENSEN, CHAMPAIGN COUNTY, ILLINOIS, the

CHAMPAIGN COUNTY SHERIFF'S OFFICE and CODY FLOYD, by Heyl, Royster, Voelker & Allen,

their attorneys, and for their Reply states:

### I.       INTRODUCTION

Plaintiff's Response narrows her claims, and shows this case ultimately redounds to what

is depicted on Officer Christensen's body camera footage. While Defendants and Plaintiff convey

very different understandings of what the video shows, this disagreement does not necessarily

create a genuine dispute of fact. This Court can watch the video with its own eyes, and decide

what it sees. Plaintiff seeks to convince the court that the footage shows a sexual assault, with

Christensen inserting his fingers between Plaintiff's buttocks. Without trivializing a serious issue,

Defendants believe the footage unequivocally depicts an unremarkable, common patdown with

the benefit of real-time motion (as compared to still images) that allows the viewer to see how

Plaintiff's pants fit her (as depicted elsewhere in the video). The manner in which the "web" of Plaintiff's baggy pants moves/collapses while Christensen is conducting his search unequivocally illustrates that Christensen is searching the loose-hanging fabric beneath buttocks, not the buttocks themselves.

This Reply will first address issues raised by Plaintiff's Responses to the Undisputed Material Facts ("UMFs") and Additional Material Facts ("AMFs"). Defendants will then address Plaintiff's substantive arguments.

However, Defendants must highlight two important concessions in Plaintiff's Response. First, Plaintiff concedes she consented to Christensen's patdown search. (d/e #56, p.30). This concession spares this Court any *Terry* or 'probable cause' analysis to determine whether the patdown search was legally authorized in the first place. Second, Plaintiff all-but concedes the automobile search. Although in a footnote Plaintiff states she does not "contend" that Christensen had probable cause to search her SUV (d/e #56, p.6 n.1), this footnote (and the rest of Plaintiff's Response) are devoid of argument about the automobile search. Given the lack of any argument on this issue coupled with the strength of the argument set forth in Defendants' Motion for Summary Judgment, Defendants understand Plaintiff to be conceding any automobile-search claim they have in all but name. With both of these concessions, this Court's analysis can focus on the sole, remaining issue: whether Deputy Christensen's seven-second patdown search was so intrusive as to violate the Fourth Amendment. For the reasons described in their original Motion and articulated below, the Defendants believe this question should be answered in their favor.

## II.    REPLY TO PLAINTIFF'S ADDITIONAL MATERIAL FACTS ("AMFs")

1.    When Defendant Christensen first approached Plaintiff's vehicle, he never said to Plaintiff that he smelled marijuana coming from the car. (Ex. A, timestamp 21:57:00-21:58:10; Ex. E, 131:16-22).

**REPLY:        Undisputed, material.**

2.    Officers did not see either Plaintiff or Graham smoking marijuana or anything resembling marijuana. (Ex. C, 111:2-20; Ex. F, 112:9-14).

**REPLY:        Undisputed, material.**

3.    No marijuana was ever recovered, either from the occupants of the vehicle or inside the vehicle. (Ex. C, 111:2-20; Ex. F, 112:9-14).

**REPLY:        Undisputed, <u>immaterial</u>, as the fact marijuana ultimately was not recovered does not speak to whether an officer in Christensen's position would have sufficient justification to search Plaintiff's person or her car. *See* Part III.A, *infra*.**

4.    Once Defendant Christensen approached the passenger side door of Plaintiff's vehicle, he said, "The reason I stopped you, not a huge deal, your plates expired two months ago in March." (Ex. A, timestamp 21:57:00 —21:57:06).

**REPLY:        Undisputed, material.**

5.    Defendant Christensen decided to search Plaintiff for officer safety. (Ex. C, 66:11¬15, 93:13-16).

**REPLY:        Undisputed, <u>immaterial</u> for Plaintiff's constitutional claims. Defendant Christensen's subjective intent is not considered by courts; rather, the focus is on what a reasonable officer in Christensen's position could have done. *See* Part III.A(3), *infra*.**

6.    Defendant Christensen did not request the presence of a female officer to conduct the pat-down search on Plaintiff. (Ex. C, 96:16-97:1; 191:1-4). Defendant Floyd also did not request the presence of a female officer at the scene. (Ex. C, 97:2-5).

**REPLY:**     **Undisputed, <u>immaterial</u>. This fact could only speak to the Defendants' compliance with Champaign County Sheriff's Office policy, and such policy does not dictate what conduct is constitutional/reasonable. *See* Part III.A(3), *infra*.**

7.    Plaintiff was not wearing baggy pants. (Ex. E, 101:15-18).

**REPLY:**     **<u>Disputed</u>, material.**

**<u>Disputed</u> because Defendants perceived Plaintiff's pants to be baggy. (UMF #32). The fit of Plaintiff's pants is clearly depicted on Defendants body camera footage — this Court may determine whether Defendant Christensen's perception was reasonable. *Scott v. Harris*, 550 U.S. 372 (2007).**

8.    Plaintiffs pants were not sagging. (Ex. E, 102:3-4).

**REPLY:**     **<u>Disputed</u>, material.**

**<u>Disputed</u> because Defendants perceived Plaintiff's pants to be baggy. (UMF #32, 48). The fit of Plaintiff's pants is clearly depicted on Defendants body camera footage — this Court may determine whether Defendant Christensen's perception was reasonable. *Scott v. Harris*, 550 U.S. 372 (2007).**

9.    Defendant Christensen's pat-down of Plaintiff was very feel [sic] toward her private areas. (Ex. E, 75:25).

**REPLY:**     **Undisputed insofar as Plaintiff did indeed testify that Deputy Christensen's search was "very feely toward my private areas." (Ex. E, 75:25).**

**<u>Disputed</u> insofar as AMF no. 9 is trying to insinuate that Deputy Christensen searched Plaintiff's genitals, or that the search was actually feely." (UMF no. 50). On the first point: Plaintiff also agreed that "private area," to her, meant her "butt." (Ex. E, 122:5–123:7). On the second point: Defendants are not sure they understand what Plaintiff meant by "feely," but the body**

**camera footage at issue clearly shows the search in question, and this Court should defer to what is clearly depicted on the video footage rather than unclear and/or mischaracterized explanations about the search.**

**Immaterial, because Plaintiff's testimony about the subject search can be set aside to the extent it is contradicted by body camera footage depicting the search. *See generally Scott v. Harris,* 550 U.S. 372 (2007).**

10.    Defendant Christensen was more so rubbing than patting Plaintiff's body. (Ex. E, 76:4).

**REPLY:**        **Disputed and material, but this dispute is semantic.**

**Candidly, Defendants are unsure of what definitions of "rub" and "pat" Plaintiff is using here.[1] The body camera footage does not show Defendant Christensen "rubbing" plaintiff as that term is often understood (i.e., moving his hands in a rotary fashion while applying pressure). Regardless of characterization, the body camera footage clearly shows the search in question, and this Court is empowered to review and determine whether Christensen was "rubbing" Plaintiff. *Scott v. Harris,* 550 U.S. 372 (2007).**

11.    Defendant Christensen's pat-down of Plaintiff felt more like a grope. He was groping Plaintiff instead of patting her down. (Ex. E, 92:3-10).

**REPLY:**        **Disputed and immaterial.**

**Disputed, because the body camera footage does not show any form of a "grope" in its common meaning, and Deputy Christensen denied any inappropriate physical contact with Plaintiff.**

**Immaterial, because AMF no. 11 does not assert a "fact," but rather offers the conclusion that Plaintiff was "groped." *See* Part III.A(3), *infra*. Thus, AMF no. 11 does not involve a "fact" that this court would consider at summary judgment. FRCP 56(e).**

---

[1] As a transitive verb, "rub" can mean "to subject to * * * the action of something moving especially back and forth with pressure and friction," or "to bring into reciprocal back-and-forth or rotary contact." *Rub.* MERRIAM-WEBSTER.COM, *available at* https://www.merriam-webster.com/dictionary/rub.

As a transitive verb, "pat" can mean "to strike lightly with a flat instrument," "to flatten, smooth, or put into place or shape with light blows," or "to tap or stroke gently with the hand to sooth, caress, or show approval." *Pat.* MERRIAM-WEBSTER, *available at* https://www.merriam-webster.com/dictionary/pat.

12.     Defendant Christensen fondled Plaintiffs buttocks in a way she never experienced before. (Ex. E, 81:16-19; 96:21-25).

**REPLY:**      **Undisputed as to Plaintiff's experience.**

**Otherwise, <u>disputed</u> and <u>immaterial</u>.**

> **<u>Disputed</u>, because the body camera footage clearly does not show Deputy Christensen "fond[ling]" Plaintiff's buttocks.**
>
> **<u>Immaterial</u>, because (as with "grope" in AMF no. 11), the word "fondle" is not a fact but rather a conclusion. _See_ Part III.A(3), _infra_. Thus, AMF no. 12 does not involve a "fact" that this court would consider at summary judgment. FRCP 56(e).**

13.     Defendant Christensen touched areas of Plaintiff's body that she never knew in her life male officers could touch. (Ex. E, 86:15-20).

**REPLY:**      **Insofar as AMF no. 13 speaks only to Plaintiff's subjective understanding/experience: <u>Disputed</u> and <u>immaterial.</u>**

> **<u>Disputed</u>, because Plaintiff testified she had been patted down a little less than a hundred of times before the subject patdown, and the body camera footage shows Deputy Christensen conducting a common, unremarkable patdown search. (UMF #4, 40–41). Plaintiff presumably also had unremarkable patdown searches before, and therefore knew (or should have known) officers (male or female) could patdown these areas.**
>
> **<u>Immaterial</u>, because Deputy Christensen was not aware of Plaintiff's particular sensitivity to being patted down where she was or by male officers, and therefore this fact was outside the knowledge of a reasonable officer in Defendant Christensen's position. _See_ Part III.A(3), _supra_.**

**Insofar as AMF no. 13 tries to claim Christensen actually touched a portion of her body that was outside the scope of a patdown search: <u>Disputed</u> and <u>immaterial</u>.**

> **<u>Disputed</u>, because the body camera footage does not support Plaintiff's claim that she was searched in an untoward fashion, and**

**the Court may accept what is clearly depicted on the body camera footage at summary judgment.** *Scott v. Harris,* **550 U.S. 372 (2007).**

**Immaterial, because the body camera footage clearly shows the search in question, making Plaintiff's testimony immaterial to the extent it contradicts what is shown on the video.** *Scott v. Harris,* **550 U.S. 372 (2007).**

14.     Defendant Christensen repeatedly touched Plaintiff's buttocks. (Ex. E, 87:1-8; 89:1).

**REPLY:       Undisputed and material that Deputy Christensen's hands would have made contact more than once with Plaintiff's buttocks as part of his search of the exterior of her pants/waistline.**

**Disputed to the extent the word "repeatedly" is meant to suggest Deputy Christensen touched Plaintiff's buttocks more than three times, which is the amount of contacts Plaintiff testified to. (Ex. E, 146:12–147:3).**

**To the extent AMF no. 14 is inconsistent with what is clearly depicted on the body camera footage, Plaintiff's cited testimony for AMF no. 14 is disputed and immaterial.** *Scott v. Harris,* **550 U.S. 372 (2007).**

15.     Defendant Christensen swiped across Plaintiff's buttocks, then ran his hand across both parts of her buttocks, and then he reached in between her buttocks. (Ex. E, 86:23-87:3, 89:8-18; 94:13-16; 98:3-5).

**REPLY:       Undisputed and material that Christensen's search of Plaintiff's outer clothing entailed running his hand against Plaintiff's buttocks.**

**Otherwise, disputed and immaterial.**

**Disputed to the extent "reached in between her buttocks" is meant to suggest that Deputy Christensen inserted his fingers or hand between Plaintiff's buttocks, or some such similar "stabbing" gesture with his hands between Plaintiff's buttocks. (Ex. E, 151:6–7) ("He didn't stab his hands into my butt cheeks, no.") The video of the patdown clearly depicts no such a thing. What the video does show is Deputy Christensen passing his hands over Plaintiff's rear pant pockets and waistline (which would, by necessity, include passing over the middle portion of Plaintiff's buttocks), and Christensen**

**approaching Plaintiff's pant pockets from underneath as part of the search of the "web" of Plaintiff's loose fitting pants. (UMF #48–49). For her part, Plaintiff testified she did not know what Christensen's hands or fingers were doing during this portion of the patdown search. (Ex. E, 148:23–149:4).**

**Immaterial, because Plaintiff's testimony can be set aside to the extent it is contradicted by what is clearly shown on the body camera footage. _Scott v. Harris_, 550 U.S. 372 (2007).**

16.    Plaintiff could feel Defendant Christensen's fingers in between her buttocks. (Ex. E, 97:18-24).

**REPLY:        Disputed and immaterial.**

**Disputed for the same reason as AMF no. 15: the video does not show Defendant Christensen putting or inserting his fingers between Plaintiff's buttocks — instead, Christensen's hand approaches Plaintiff's back pockets from underneath as he tried to search the "web" of pant fabric between Plaintiff's legs.**

**Also disputed because Plaintiff testified that she could not say how Christensen was performing this portion of the search. (Ex. E, 148:23–149:4) ("I can't really tell you how his hands was in me because of the simple fact of I was getting searched, so I can't [] really tell you because I can't really tell you what – how he put his hands, no, I can't tell you that. I'm sorry, I cannot [] tell you that.")**

**Immaterial, because Plaintiff's testimony can be set aside to the extent it is contradicted by what is clearly shown on the body camera footage. _Scott v. Harris_, 550 U.S. 372 (2007).**

17.    Defendant Christensen was rough by the way he was grabbing her during the pat-down. (Ex. E, 90:7-11).

**REPLY:        Undisputed that Plaintiff testified Deputy Christensen was "[a] little rough" during the patdown. (Ex. E, 90:7).**

**To the extent AMF no. 17 suggests Deputy Christensen actually was "rough" during the patdown, disputed and immaterial.**

> **Disputed**, because the video footage does not show a "rough" patdown search. ***See portion of video cited in*** (UMF #41).
>
> **Immaterial** because (1) Plaintiff's testimony can be disregarded to the extent clearly contradicted by the body camera footage, and (2) "rough" is a conclusion, not a fact, and therefore not entitled to consideration at summary judgment. ***See* Part III.A(3),** *infra*.

18. After Defendant Christensen touched in between Plaintiff's buttocks, Plaintiff told him "Woah, bro. Don't touch my butt, please." (Ex. A, timestamp 22:05:04-22:05:08; Ex. E, 87:18-23).

**REPLY:** **Disputed and immaterial that Defendant Christensen "touched in between Plaintiff's buttocks." *See* Reply to AMF nos. 15–16. Otherwise, Defendants will allow the video to speak for itself.**

19. Plaintiff then walked off regardless of what Defendant Christensen had to say because he did too much during the pat-down. (Ex. E, 102:23-24).

**REPLY:** **Undisputed and material to the limited extent AMF no. 19 speaks to Plaintiff's ability to consent to the search in question.**

> **Otherwise, immaterial, as the Plaintiff's internal thought process for walking away from the search does not speak to Defendant Christensen's liability — i.e., whether it was Christensen's search was reasonable under the Fourth Amendment. *See* Part III.A(3),** *infra*.

20. Defendant Christensen did not find any weapons or drugs on Plaintiff's person or in her vehicle. (Ex. C, 111:5-11, 112:4-15, 113:5-114:3).

**REPLY:** **Undisputed and immaterial. The claims against Christensen center on the facts known to him at the time he acted, and what an objective officer would have done when faced with those facts. Christensen did not know at the time of the patdown or vehicle search that Plaintiff did not have any contraband on her person or in her car. *See* Part III.A(3),** *infra*.

21. Defendant Christensen did not search Plaintiff's chest area, arms, back, lower legs, or under her armpits. (Ex. E, 76:13-18; Ex. C, 100:2-11).

**REPLY:** **Undisputed, material.** *See* **(UMF # 27, 44).**

22.     Plaintiff felt that Defendant Christensen was trying to belittle her as opposed to actually trying to search her. (Ex. E, 89:14-17).

**REPLY:** **Undisputed and __immaterial__ to the extent AMF no. 22 speaks accurately captures Plaintiff's testimony.**

> **__Immaterial__, because Plaintiff did not communicate her feelings about Deputy Christensen's search until after the search had concluded. (UMF #51–53).**

> **Furthermore, __immaterial__ because Plaintiff's testimony about what she believed Deputy Christensen was thinking during the search (something she agreed she did not know) is speculation, and therefore incompetent testimony. (Ex. E, 89:14–24, 151:24–152:7). AMF no. 22 is therefore not supported by competent evidence, and should be disregarded. FRCP 56(e).**

> **__Disputed__ and __immaterial__ that Christensen was *actually* trying to belittle Plaintiff (as compared to search her).**

>> **__Disputed__, because Christensen told Ms. Ayres he was trying to determine whether she had weapons on her. *See* (UMF #54).**

>> **__Immaterial__, because Christensen's subjective intent is not relevant for Fourth Amendment liability. *See* Part III.A, *infra*.**

23.     Deputy Floyd was positioned where he had a clear view of what Deputy Christensen's hands were doing as he searched Ayres as can be seen by Floyd's body camera footage. (Ex. B, timestamp 22:04:59-22:05:06).

**REPLY:** **Undisputed and material that Deputy Floyd could see the side of Plaintiff's person during the patdown in question, and by extension Christensen's patdown to the extent it involved the side of Plaintiff's person.**

> **__Disputed__ and __immaterial__ that Deputy Floyd could clearly see where Deputy Christensen's hands were as they allegedly searched Plaintiff's buttocks.**

>> **__Disputed__, because the body camera footage shows that Floyd did not have a sufficient visual of Christensen's hands as he allegedly**

**searched Plaintiff's buttocks to see whether Christensen was doing anything inappropriate.** *See portion of video cited by Plaintiff in AMF no. 23*.

**Immaterial, because this dispute is contradicted by the video evidence, and therefore the court can defer to what is clearly shown on the video.** *Scott v. Harris,* **550 U.S. 372 (2007).**

24. Defendant Floyd was standing in the vicinity of Defendant Christensen's front passenger headlight. (Ex. C, 92:5-8).

**REPLY:** **Undisputed, material.** *See* **(UMF #29).**

25. Defendant Floyd was not too far away, less than 10 feet away when the pat-down search occurred. He was just standing there, not doing anything else, during the pat-down search. (Ex. E, 135:2-20).

**REPLY:** **Disputed and material, however the dispute is resolved by the body camera footage.** *Scott v. Harris,* **550 U.S. 372 (2007).**

**Disputed (somewhat) and immaterial as to Floyd's distance from the search. There is testimony that Floyd was by Christensen's squad car during the search (UMF #29), that there was "about" ten feet separating Plaintiff's SUV and Christensen's squad car (UMF #58), and body camera footage shows the search happening between these two cars, with Floyd about a body length away from Plaintiff and Defendant Christensen during the patdown. (Ex. B, timestamp 22:04:59-22:05:06). The precise distance is immaterial, because the body camera footage shows that Floyd was not within arm's length of either Christensen of Plaintiff.**

**Disputed and material that Deputy Floyd was "just standing there, not doing anything else" during the patdown. The body camera footage shows that near the start of the search, Plaintiff's passenger, Letika Graham, was communicating to the deputies that she needed to be at work soon, and Deputy Floyd testified he would have looked at the car to respond to Ms. Graham. (Ex. D, p. 132–133). Thus AMF no. 25 is incorrect.**

26.     Defendant Floyd witnessed part of the search. (Ex. D, 78:24-25). Defendant Floyd

saw Defendant Christensen search Plaintiff's waistline. (Ex. D, 80:22-81:1).

**REPLY:**     **Undisputed and material, to the extent "Floyd saw Defendant Christensen search Plaintiff's waistline" is limited to the side of Plaintiff that was visible to Floyd on the body camera.**

**Otherwise, <u>disputed</u> and <u>immaterial</u> to the extent AMF no. 26 suggests Floyd was able to clearly see how Christensen performed the alleged meaningful 'buttock searches.' Floyd's body camera footage shows that he had no visual of these searches. (Ex. B, timestamp 22:04:59-22:05:06). <u>Immaterial</u>, because this dispute can be resolved by reliance on the body camera footage. *Scott v. Harris,* 550 U.S. 372 (2007).**

27.     Defendant Floyd testified that he could not recall if he saw Defendant

Christensen search anywhere other than Plaintiff's waistband. (Ex. D, 81:25-82:2).

**REPLY:**     **Undisputed, material.**

28.     Defendant Floyd conducted a second traffic stop on Plaintiff's vehicle

approximately 20 minutes after the first traffic stop. (Ex. D, 100:1-24; Ex. E, 130:10-17).

**REPLY:**     **Undisputed and <u>immaterial</u>, because there is no claim that probable cause was lacking for this second traffic stop; moreover, Defendant Floyd testified he did not know it was Plaintiff's vehicle that he was stopping. (Ex. D, 101:25–102:7).**

29.     Defendant Floyd pulled Plaintiff's vehicle over for a second time for the same

traffic violation as before. (Ex. D, 100:1-24).

**REPLY:**     **Undisputed and <u>immaterial</u>. *See Reply to AMF no. 28, supra.***

30.     During the second traffic stop, Defendant Floyd laughed and acknowledged that

he already pulled Plaintiff over. (Ex. E, 130:24-131:1).

**REPLY:**     **Undisputed and <u>immaterial</u>. *See Reply to AMF no. 28, supra.***

31.     The video of the pat-down search was published in an online news article. (Ex. F, 7:13-8:2; Ex. E, 35:13-36:3).

**REPLY:**     **Undisputed as to citation, and <u>immaterial</u>. Perhaps this fact would be relevant to the issue of damages, but does not speak to the threshold issue of liability for the Defendants.**

32.     The pat-down made Plaintiff feel violated and really harassed. (Ex. F, 68:21-22; 83:20-84:1). Plaintiff felt really low and punched holes in her walls as a result. (Ex. E, 138:1-8; 140:23).

**REPLY:**     **Undisputed as to citation, and <u>immaterial</u> Perhaps this fact would be relevant to the issue of damages, but does not speak to the threshold issue of liability for the Defendants. *See* Part III.A(3), *infra*.**

33.     Plaintiff cries to her girlfriend Letika Graham about the pat-down search. (Ex. F, 68:2).

**REPLY:**     **Undisputed as to citation, and <u>immaterial</u> Perhaps this fact would be relevant to the issue of damages, but does not speak to the threshold issue of liability for the Defendants. *See* Part III.A(3), *infra*.**

34.     Since the search, Plaintiffs mood has changed. Plaintiff is more on edge. Plaintiff gets jumpy, frantic, and worried at the sight of police that something's going to happen to her. (Ex. F, 83:9-12).

**REPLY:**     **Undisputed as to citation, and <u>immaterial</u>. Perhaps this fact would be relevant to the issue of damages, but does not speak to the threshold issue of liability for the Defendants. *See* Part III.A(3), *infra*.**

35.     Plaintiff sees a mental health counselor approximately once a week as a result of this incident. (Ex. E, 132:9-14; 133:15-20).

**REPLY:**     **Undisputed and <u>immaterial</u> that Plaintiff has discussed the subject incident with a mental health counselor. <u>Immaterial</u>, because this fact would be relevant to the issue of damages, but does not speak to the threshold issue of liability for the Defendants.**

13

**Disputed** and **immaterial** insofar as AMF no. 35 states Plaintiff began seeing a mental health counselor *because* of the subject incident. Plaintiff testified that she has "been seeing counselors all my life," and that she started seeing the mental health professional in question because Plaintiff moved from Mattoon, Illinois to the Champaign-Urbana area, and needed a new counselor who was closer to her new home. **(Ex. E, 37:4–9, 38:14–20).** Regardless, AMF no. 35 is **immaterial** because it speaks to damages, not the issue of liability.

36. Joseph J. Blaettler have over 33 years of law enforcement and criminal justice experience, training, and education in the field of investigations, supervision, procedures, and operations. (Ex. J, 1).

**REPLY:** **Undisputed, and immaterial.**

> **Disputed**, because Joseph Blaettler's conclusions are contested by Defendants' expert, John Blum. **(Ex. K, attached hereto).**

> **Immaterial**, because Joseph Blaettler's credentials could only be relevant as a foundation for his expert opinion. However, an expert witness does not define what the Fourth Amendment of the Constitution requires — a legal issue that is decided by this Court based on the record facts. *See* **Part III.A(3)**, *infra*.

> Also **immaterial** because Blaettler's report is attached without any supporting affidavit verifying its authenticity, and is therefore inadmissible hearsay and cannot be considered for purposes of summary judgment. *See Scott v. Edinburg*, 346 F.3d 752, 759–760 & n.7 (7th Cir. 2003) (excluding expert's unverified report; citing authorities).

37. A visual inspection should be used in lieu of a pat-down when conducting a cross- gender search. (Ex. J, 30).

**REPLY:** **Disputed** and **immaterial.**

> **Disputed**, because Joseph Blaettler's conclusions are contested by Defendants' expert, John Blum. **(Ex. K).**

**Immaterial**, because an expert witness does not define what the Fourth Amendment of the Constitution requires — a legal issue that is decided by this Court based on the record facts. *See* **Part III.A(3)**, *infra*.

Also **immaterial** because Blaettler's report is attached without any supporting affidavit verifying its authenticity, and is therefore inadmissible hearsay and cannot be considered for purposes of summary judgment. *See Scott v. Edinburg*, **346 F.3d 752, 759–760 & n.7 (7th Cir. 2003) (excluding expert's unverified report; citing authorities).**

38.     Searches utilizing finger manipulation or palm touching should be avoided

whenever possible in favor of a search utilizing the back of a stiff, bladed hand. (Ex. J, 30).

**REPLY:**          **Disputed** and **immaterial.**

**Disputed**, because Joseph Blaettler's conclusions are contested by Defendants' expert, John Blum. (Ex. K).

**Immaterial**, because an expert witness does define what the Fourth Amendment of the Constitution requires — a legal issue that is decided by this Court based on the record facts. *See* **Part III.A(3)**, *infra*.

Also **immaterial** because Blaettler's report is attached without any supporting affidavit verifying its authenticity, and is therefore inadmissible hearsay and cannot be considered for purposes of summary judgment. *See Scott v. Edinburg*, **346 F.3d 752, 759–760 & n.7 (7th Cir. 2003) (excluding expert's unverified report; citing authorities).**

39.     The search of a female by a male officer requires special care to avoid

unnecessarily invading the private areas. (Ex. J, 31).

**REPLY:**          **Disputed** and **immaterial.**

**Disputed**, because Joseph Blaettler's conclusions are contested by Defendants' expert, John Blum. (Ex. K).

> **Immaterial, because an expert witness does define what the Fourth Amendment of the Constitution requires — a legal issue that is decided by this Court based on the record facts.** *See* **Part III.A(3),** *infra.*
>
> **Also underline immaterial because Blaettler's report is attached without any supporting affidavit verifying its authenticity, and is therefore inadmissible hearsay and cannot be considered for purposes of summary judgment.** *See Scott v. Edinburg***, 346 F.3d 752, 759–760 & n.7 (7th Cir. 2003) (excluding expert's unverified report; citing authorities).**

40. It is Champaign County Sheriff s Office policy that a male deputy should request a female deputy to perform a search on a female person. (Ex. D, 53:14-17; Ex. G, 71:20-72:1).

**REPLY:** **Disputed and immaterial.**

> **Disputed, because the Sheriff's Office's policy is for male deputies to make "reasonable attempts" to get a same-sex deputy for a search. (Ex. G, 71:20–72:1). The policy is not a blanket prohibition of male deputies searching female suspects.**
>
> **Immaterial, because (1) there is no** *Monell* **claim against the Sheriff's Office, and (2) Sheriff's Office policy does not define what is reasonable under the Fourth Amendment.** *Scott v. Edinburg***, 346 F.3d 752, 760 (7th Cir. 2003).**

41. It is Champaign County Sheriffs Office policy that once a deputy of the opposite sex of a subject makes reasonable attempts to locate a deputy of the same sex to conduct a pat-down search of the subject, the deputy must then report the attempts made to locate a same-sex deputy and whether the deputy located a same-sex deputy to conduct the pat-down search. (Ex. G, 71:16-72:18).

**REPLY:** **Undisputed and immaterial. Whether Christensen complied with a Sheriff's Office documentation policy not does not define what is reasonable under the Fourth Amendment.** *Scott v. Edinburg***, 346 F.3d 752, 760 (7th Cir. 2003). Moreover, it is undisputed that Christensen was not even aware of the policy at issue, such that the policy could have informed his conduct. (AMF #43);** *see* **Part III.A(3),** *infra.*

16

42.     Defendant Christensen did not document the traffic stop in any formal written report (Ex. C, 120:21-23).

**REPLY:**     **Undisputed that Christensen's testimony is accurately cited, and that he did not document the traffic stop in a "formal written report."**

**Immaterial, because whether Christensen complied with a Sheriff's Office documentation not does not define what is reasonable under the Fourth Amendment. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003). Moreover, it is undisputed that Christensen was not even aware of the policy at issue, such that the policy could have informed his conduct. (AMF #43); *see* Part III.A(3), *infra*.**

43.     Defendant Christensen is not aware of the Champaign County Sheriff s Office policy requiring him to document reasonable attempts made to locate a same-sex deputy of the subject of the pat-down search. (Ex. C, 121:3-6).

**REPLY:**     **Undisputed and immaterial, as Sheriff's Office policy that Christensen was not aware of does not define what is reasonable under the Fourth Amendment or have informed his conduct. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003).**

### III.    ARGUMENT

**A.  THE UNDISPUTED MATERIAL FACTS ("UMFS") AND ADDITIONAL MATERIAL FACTS ("AMFS")**

A handful of Plaintiff's UMF and AMFs raise issues that warrant being specifically addressed.

#### 1.  The video does not show Deputy Christensen inserting his hands/fingers between Plaintiff's buttocks.

Running through Plaintiff's UMF responses, her AMFs, and her argument is a key premise: that Deputy Christensen actually inserted his fingers in between Plaintiff's buttocks, and also "groped"/"fondled" Plaintiff. Defendants do not believe the record — even at summary judgment — support Plaintiff's premise.

First, the video. Plaintiff makes much of the body camera footage, but Defendants are confident a sober analysis belies her claim. The video does not show groping, fondling, or 'roughness.' Rather, the video shows Deputy Christensen using his gloved hands to search the exterior of Plaintiff's pant pockets, and the "web" of fabric between her legs — both areas that happen to be proximate to Plaintiff's buttocks. Plaintiff appears to claim this "web" search is when Christensen inserted his hands between her buttocks. (See next paragraph). But the video does not support this claim. Once the fit of Plaintiff's pants is established by watching her elsewhere in the body camera footage, it is clear Christensen did not put his hand/fingers between Plaintiff's buttocks: the manner in which the "web" of her pants collapses as Christensen performs his search shows there is no body part where Christensen is searching. This Court may look with its own eyes and decide the question. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

Second, the testimony. Preliminarily, Plaintiff's testimony is only relevant to the extent it is not contradicted by Christensen's body camera footage. To that end: Plaintiff testified

Christensen inserted his fingers between her buttocks from the outside of her pants. (*See* AMF #15–16). But Plaintiff herself testified that she did not know where Christensen's hands were during this portion of the search, what his fingers were doing, how deep Christensen's hands/fingers were between Plaintiff's buttocks, or how long Christensen's hands made the alleged offensive contact. (*See* Reply to AMF #15–16). Thus, Plaintiff's testimony establishes, at most, that some portion of Christensen's hand for some amount of time was in between Plaintiff's buttocks. Coupling this testimony with rest of the record, Plaintiff's best inference (*arguendo*) is that Christensen made some incidental contact between Plaintiff's buttocks in the last moment of the patdown, as part of checking the "web" of Plaintiff's pants for weapons. Defendants do not believe this inference has merit, and, regardless, it does not defeat summary judgment. (*See* Part III, B(2)–(3), *infra*).

## 2. Plaintiff disputes numerous UMFs with testimony/evidence that does not speak to the fact articulated by the UMF in question.

In their response to Defendants' UMFs, Plaintiff tries to dispute multiple facts by either (1) trying to rebut affirmative testimony with neutral testimony, and/or (2) offering testimony that does not speak to the actual UMF in question. For the sake of brevity, Defendants will not respond to each UMF in detail, but will try to demonstrate the issue for this Court.

### a. *Contradicting Affirmative Testimony with Neutral Testimony: The Smell of Cannabis*

Preliminarily, whether Christensen smelled marijuana or not would only be relevant to the extent he needed a "reasonable suspicion" or "probable cause" to search Plaintiff or her car. However, Plaintiff conceded that she consented to the patdown search. (d/e #56, p.30). Thus, Christensen had the lawful authority to patdown Plaintiff regardless of whether he smelled

cannabis. *See Florida v. Jimeno*, 500 U.S. 248, 250–51 (1993) (noting it is "reasonable" under the Fourth Amendment for officers to "conduct a search once they have been permitted to do so").

Nonetheless, Plaintiff disputes that Christensen smelled cannabis coming from the car, pointing to the following facts: (1) Christensen did not mention the smell of cannabis when he "first approached the vehicle," (2) Christensen did not see Plaintiff or her passenger smoke marijuana, and (3) no marijuana was ever recovered. *See, e.g.*, (d/e #56, Response to UMF #14). Elsewhere, Plaintiff disputes that Christensen radioed for backup so he could search the vehicle for cannabis, noting the body camera footage shows Christensen radioed for backup for a "PC search". (*Id.*, Response to UMF #16).

Respectfully, Plaintiff is off the mark: she is trying to dispute affirmative testimony with testimony that is "neutral,' rather than contradictory. As Defendants already identified, Christensen testified he smelled marijuana in the car. (d/e #53, UMF #14). Christensen is also on video multiple times saying he smelled marijuana. (d/e #53, UMF #26, 34). To dispute this, Plaintiff would need evidence showing the car *did not* smell like marijuana — perhaps a statement from Plaintiff herself denying the scent. Instead, Plaintiff admitted at her deposition that the car "could have" smelled like weed, that she smoked weed in the car frequently in the months before the traffic stop, and she told Christensen she had smoked weed "earlier." (d/e #53, UMF #14). Plaintiff is correct that Christensen did not tell Plaintiff while first speaking to her that he smelled marijuana in the car, but the first thing he does after stepping away from the car is radio for backup for a "PC search," (i.e., a 'probable cause search') which Christensen explained he did because he smelled marijuana. (d/e #53, UMF #16); (Ex. C, p.59:3–22) (testifying to why he called for backup/a "PC search"). The fact Christensen did not see Plaintiff actually smoke

marijuana, or recover any marijuana from the vehicle, does not mean Christensen did not *smell* marijuana in the car.

### b. Trying to "Dispute" Something Other than What the UMF Stated

Plaintiff tries to dispute a number of UMFs by citing to evidence speaking to a different fact. *See, e.g.*, (Resp. to UMF #14, 18, 19, 26, 44, 46).

To demonstrate the concept: Plaintiff tries to dispute a portion of UMF #26, which states that before the patdown search occurred, Christensen told Floyd that Plaintiff was a reported gang member. (d/e #56, Resp. to UMF #26). To dispute this portion of UMF #26, Plaintiff cites her deposition testimony to show "Plaintiff is not a gang member and has never been in a gang." (*Id*.). But UMF #26 is not about whether Plaintiff *actually* is a reported gang member, but rather whether Christensen *told* Floyd Plaintiff was. Stated differently, it is possible for Plaintiff to have not actually been a gang member, and for Christensen to tell Floyd she was a reported gang member. Thus, Plaintiff does not actually "dispute" UMF #26.

### 3. Other Issues

A handful of Plaintiff's UMF Responses and AMFs raise issues that warrant being specifically addressed.

**First,** Plaintiff asserts that certain facts are "material" despite being outside the Defendants' knowledge at the time the Defendants acted. *See, e.g.*, (AMF #13, 19, 20, 22, 32–33); (Resp. to UMF #14, 17, 23, 26, 46). Plaintiff's main claims sound in the Fourth Amendment, however, meaning the Defendant Officers' conduct is viewed objectively, and only in light of the facts known to them at the time they acted. *See Carmichael v. Vill. of Palantine, Ill.*, 605 F.3d 451, 457 (7th Cir. 2010) (noting the standard is not what an "omniscient observer" would have

known). Therefore, a fact unknown to the Defendants — such as that Plaintiff did not have a weapon in her waistline — are immaterial to assessing the Defendants' liability.

**Second** (and relatedly), Plaintiff cites to evidence speaking to either what the Defendant Officers' subjective intent was, or Plaintiff's perception of their subjective intent. *See, e.g.*, (AMF #5, 22). Plaintiff also cites evidence relating to Champaign County Sheriff's Office policies. (AMF #40–43). But, again, the relevant liability analysis is an *objective* one: what a reasonable officer in the Defendants' position (i.e., not the Defendants themselves) would have done. Thus, what Christensen and Floyd were actually thinking/hoping to accomplish does not speak to Defendants' liability, and are immaterial at summary judgment. *See, e.g., Ashcroft v. al-Kidd*, 563 U.S. 731, 737 (2011). Moreover, the Fourth Amendment's requirements are not dictated by departmental policy. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003). And, at any rate, there is no *Monell* claim against the Sheriff's Office that would make its policies otherwise relevant. Defendants acknowledge that compliance with departmental policy can be relevant in some circumstances, but Plaintiff's claim that Deputy Christensen essentially assaulted her would be easily comprehended by a jury, if believed, negating the need for such evidence and rendering it immaterial. *See United States v. Brown*, 871 F.3d 532, 538–39 (7th Cir. 2017).

**Third**, Plaintiff apparently tries to prove the Defendants' conduct was unreasonable by pointing to how the conduct made *her* feel, or how Plaintiff's *expert* feels about the conduct at issue. *See, e.g.*, (AMF #19, 22, 32, 33). But feelings alone cannot and do not create a fact dispute. Fourth Amendment "reasonableness" is a question of law for this court's consideration, given there are sufficient undisputed material facts. *See Bell v. Crow*, 321 F.3d 637, 640–41 (7th Cir. 2003). Defendants' position is that their conduct is permissible as a matter of law, even at

summary judgment, given the security footage and testimony at issue. Consistent with this position, Plaintiff's expert report (to the extent this Court considers it) does not defeat summary judgment: not only is it based on a wholesale adoption of Plaintiff's version of the facts (rather than the undisputed material facts), but by extension the report would also be inaccurately criticizing conduct otherwise permissible by the Fourth Amendment. *See, e.g.*, *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (rejecting expert report in Fourth Amendment case that criticized the defendant-officer's conduct under a standard different from what the Seventh Circuit applied to the same conduct). Finally, although Plaintiff's feelings about the subject search speak to her damages, those issues are beyond the scope of the instant Motion.

**Fourth**, Plaintiff asserts conclusions as "facts." For example, Plaintiff states as an undisputed fact that she was "groped" and "fondled" by Christensen during the patdown search, or that the patdown search was "rough". (AMF nos. 11, 12, 17). But to testify one was "groped" is not to testify to a fact, but rather to offer a conclusion, as the Northern District noted in *Anderson v. Cornejo*, 199 F.R.D. 228, 259–261 (N.D. Ill. 2000) (summary judgment; discussing various plaintiff's testimonies regarding alleged intrusive patdown searches). The *Anderson* Court rejected a plaintiff's attempt to claim she was subject to an intrusive search by "[c]onclusorily stating that she was groped," because a plaintiff "must describe what she means by groped so that it can be determined whether she was subjected to an intrusive patdown search." *Id.* The same logic should apply to Plaintiff's claims that she was "groped," "fondled," or that Christensen was "rough." Plaintiff testified she used these terms interchangeably in her deposition (Ex. E, 92:11–93:2), and Plaintiff was unable to offer testimony describing what action Christensen did that warranted these labels, aside from generally saying Christensen touched

her buttocks as part of the patdown search. *See, e.g.*, (Ex. E, 148:23–149:4) ("I can't really tell you how his hands was in me because of the simple fact of I was getting searched, so I can't [] really tell you because I can't really tell you what – how he put his hands, no, I can't tell you that. I'm sorry, I cannot [] tell you that.") Stated differently, Plaintiff's conclusory testimony does not help the Court understand what occurred during the subject search; accordingly, Plaintiff's assertion that she was "groped," "fondled," or that the search was "rough" cannot and should not impact this Court's legal analysis.

**B.  DEPUTY CHRISTENSEN:**

Preliminarily, Plaintiff appears to narrow her claim against Christensen to the patdown search. Plaintiff's Response does not address the automobile search, aside from a footnote in their Brief that notes, without argument, that Plaintiff "does not contend" that Christensen "had probable cause to search Plaintiff's vehicle at the time of the traffic stop." (d/e #56, p.6 n.1). Given Plaintiff's response, Defendants do not see a need to address the automobile search further.

As for the patdown search, the Fourth Amendment requires two issues to be addressed: (1) *whether* the Fourth Amendment permitted the search, and (2) *how* the search was done. Plaintiff's Response will be discussed on both points.

### 1.  Whether the Search Could be Done:

#### a.  Plaintiff Concedes She Consented a Patdown Search — no further analysis is necessary on this prong

Plaintiff appears to concede that she consented to Christensen's patdown. (d/e #56, p.30). This resolves the question of "whether" Christensen could have patted Plaintiff down, and shifts the focus to "how" he patted her down. Thus, this Court need not decide whether there was

"reasonable suspicion" or "probable cause" to justify the search in the first place — issues that Plaintiff focuses much of her Response on. (d/e #56, p. 23–30).

### b. Plaintiff's arguments against probable cause are contrary to the cited authorities.

Defendants believe this issue is moot because Plaintiff agreed she consented to the patdown search — i.e., an officer in Deputy Christensen's position did not need to have probable cause to search Plaintiff for drugs in order to pat her down. Nonetheless, Plaintiff's Response discussed probable cause, and Defendants feels obligated to clear things up.

Preliminarily, Defendants argued in their original Motion that the traffic stop in question created a sufficient exigency to excuse the need to get a warrant for a probable cause search. Plaintiffs did not mention this issue in their brief. Defendants consider the matter conceded.

The remaining issue is whether Christensen had probable cause that Plaintiff had a then-illegal drug on her person when he (1) smelled the odor of marijuana from a car Plaintiff was driving, and (2) Plaintiff then localized the scent to herself by telling Christensen she has smoked weed "earlier." Defendants have already argued that these two facts establish probable cause, and will not reiterate the argument here. (d/e #53, p.24). To rebut this position, Plaintiff cites *Lessley v. City of Madison*, *Ind.*, for the proposition that the "odor [of marijuana in the car] alone did not give the officers probable cause to search [the passengers]." (d/e #56, p.28) (quoting *Lessley*, 654 F. Supp. 2d 877, 897 (S.D. Ind. 2009)). But *Lessley* is consistent with Defendants' position: as already described, Christensen had more than the smell of marijuana alone — he had Plaintiff's admission that she smoked marijuana earlier. Plaintiff makes no other argument about probable cause the Defendants can determine.

## 2. How the Search Was Done:

Plaintiff's argument about how the search was done raises a number of issues, many of which overlap with those discussed in Part III.A. Defendants will not reiterate those arguments in depth here, but instead insert them into a legal analysis.

Preliminarily, it is undisputed that Plaintiff never communicated any discomfort to Christensen about the search until after it was over. (d/e #56, UMF #51–53). It is also undisputed that the search lasted only seven seconds — a fact relevant for determining the scope of any alleged intrusion, and Floyd's opportunity to prevent any inappropriate aspect of the search. (d/e #56, Resp. to UMF #41).

Defendants are grateful to Plaintiff for clarifying her theory for why Christensen's patdown is allegedly inappropriate. *See* (d/e #56, pp. 25–26). After acknowledging that her claim is not about various actions that Deputy Christensen did (such as a palms-in search of Plaintiff's rear pockets or "web" of fabric between Plaintiff's legs), Plaintiff states this case is about Christensen "[g]roping and fondling a woman's buttocks under the guise of a pat-down search for 'officer safety." (d/e #53, p.26). To Plaintiff, the record permits the inference that Christensen "touched her buttocks multiple times and inserted his fingers into the crevice of her buttocks." (d/e #56, p.26) (citing AMF ¶¶ 14–16).

Defendants disagree.

To start, the video does not establish that Deputy Christensen actually inserted his fingers in between Plaintiff's buttocks. *See* Part III.A(1), *supra*.

Likewise, Plaintiff's testimony that she was "groped" or "fondled" lacks factual support: these are legal conclusions masquerading as facts, and Plaintiff was unable to provide their underlying

factual edifice. *See* Part III.A(2), *supra*. Instead, the record shows that Deputy Christensen was patting down Plaintiff's rear pockets and the "web" of her pants — areas that happened to be in proximity to her buttocks. If patting down a member of the opposite sexes' pant pockets (and by necessity, making some degree of contact with the suspect's buttocks) violates the constitution, Defendants have not found that case, and Plaintiff has not provided it.

Plaintiff also keeps referencing facts speaking to Deputy Christensen's subjective intent. But this is simply irrelevant for her constitutional claims. *See* Part III.A(3), *supra*. For example, Plaintiff cites *Sibron v. New York*, 392 U.S. 40 (1968), for the idea that a patdown search under *Terry* must be limited to weapons. (d/e #56, 26–27). She goes on to argue Defendant Christensen therefore could not have conducted a more extensive search for drugs here, because Christensen believed his search was for weapons under *Terry*.

If Plaintiff was correct, that would remove the "objective" component of the Fourth Amendment's objective analysis.

First, Plaintiff's argument assumes a reasonable officer in Defendant Christensen's position could *only* have performed a *Terry* patdown for weapons. Defendants have argued that an officer in Christensen's position would also have had probable cause and exigency to search Plaintiff for drugs. Plaintiff does not meaningfully rebut this argument. *See* Part III.B(1)(b). Whether Christensen himself connected the dots does not preclude the proverbial 'reasonable officer' from doing so.

Second, *Sibron's* holding means that an officer conducting a *Terry* patdown cannot go beyond a patdown of the suspect's outer clothing to detect weapons. In *Sibron*, the officer simply walked up to the suspect and immediately stuck his hand *inside* the suspect's pocket. But

there is no argument on this record establishing that Deputy Christensen stuck his hands *inside* Plaintiff's clothes — Plaintiff's issue is *how* Christensen searched the outside of her clothes. Moreover, there is no evidence showing Christensen lacked the experience or training necessary to believe that weapons may be where he searched — Plaintiff's sole argument to the contrary is the unsupported statement that it would be "both strange and quite difficult to hide a gun or the like" where Christensen searched, ignoring that "guns or the like" are not the only weapons in the world. (d/e #56, p.27); see also (Ex. H, ¶5) (listing weapons).

Finally, Defendants acknowledge that amongst her other testimony establishing her inability to provide any specifics regarding how Officer Christensen touched her buttocks, Plaintiff testified (although inconsistent with the body camera footage) that some undetermined portion of Deputy Christensen's hand and/or fingers was between some undetermined portion of Plaintiff's buttocks for some undetermined amount of time. *See* Part III.A(1), *supra*. Defendants believe this testimony is unsupported and unwarranted, given the body camera footage. Even if Plaintiff's testimony is considered, *arguendo*, it doesn't defeat summary judgment. Coupling Plaintiff's testimony with the rest of the record — such as Christensen's detailed testimony about the search, and the body camera footage — the resulting inference is that Deputy Christensen momentarily contacted between Plaintiff's buttocks while he was searching the "web" hollow of her pants. *Id.* The video shows this contact would have lasted a split second, as Christensen concluded his search immediately after checking the "web" hollow of Plaintiff's pants. Even with this inference in Plaintiff's favor, Defendant's believe summary judgment is warranted for the reasons articulated in their initial Motion. (d/e #53, p.30–32). In short: Seventh Circuit authority permits opposite-sex officers to patdown/search around a suspect's buttocks, and it is

undisputed that Christensen did not touch Plaintiff's genitalia or make lewd comments during the search. *Id.*

### 3. Qualified Immunity

For qualified immunity, Plaintiff's argument only describes the right in question at a general level, and otherwise relies on authority that is not "controlling."

Preliminarily, Defendants *arguendo* give Plaintiff the benefit of her testimony that she felt Deputy Christensen's finger(s) between her buttocks at some point in the search. As Defendants have already articulated, this testimony is contradicted by the video evidence, and at most, permits an inference that Deputy Christensen momentarily went between Plaintiff's buttocks while searching the "web" of Plaintiff's pant fabric. *See* Part III.A(1), *supra*. Given this inference, Defendants believe the relevant right that needs to be established is whether the Fourth Amendment condemned a male officer who, during a traffic stop, patted down a female suspect's back pockets/buttocks and/or who momentarily and incidentally contacted between the female suspect's buttocks.

Turning to Plaintiff's Response:

**First**, **Plaintiff's description of the right at issue is too generalized.** The Supreme Court has repeatedly advised that courts are "not to define clearly established law at a high level of generality." *Ashcroft*, 563 U.S. 731, 742. Broad principles about the Fourth Amendment's reasonableness standard will not illuminate the question of whether a reasonable official would have understood that his or her conduct is unlawful. *Id.*

Here, Plaintiff cites two Seventh Circuit cases in order to define the right at issue, *Mary Beth G v. Chicago* and *Madyun v. Franzen*:

It is a clear constitutional principle that police officers are not entitled to engage in "extreme or patently abusive" searches of a person. *Mary Beth G.*, 723 F.2d at 1270 (citing *Robinson*, 414 U.S. at 236). Second, the Seventh Circuit has described a search pursuant to a *Terry* stop as "a simple frisk or pat-down, done outside the clothing, without any deliberate attempt to examine the 'genital-anal' areas." *Madyun v. Franzen*, 704 F.2d 954, 956-57 (7th Cir. 1983), cert. denied, 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983). Therefore, the manner by which

(d/e #56, p. 33–34).

Neither citation is availing for Plaintiff.

To start, *Mary Beth* G provides a blanket statement of Fourth Amendment policy — it's prohibition against "extreme or patently abusive" searches is essentially the flipside of the Fourth Amendment's requirement that searches be "reasonable," and this level of generality is insufficient. *See Ashcroft*, 563 U.S. at 742.

For its part, *Madyun*'s prohibition against "deliberate" examinations of "genital-anal areas" does not cover the facts here. Defendants do not believe the body camera footage supports an inference that Christensen touched between Plaintiff's buttocks. But even if Christensen did, *see* Part III.A(1), the record contains no evidence that Christensen *deliberately* contacted Plaintiff's 'anal area.' Plaintiff cannot competently speculate to Christensen's intent, and Christensen's conduct is consistent with his stated goal of patting down Plaintiff's back pockets and "web" of pant fabric between her legs. Moreover, *Madyun* did not define "genital-anal" area, such that it would be clear where the line between a permissible and impermissible patdown is. *See Madyun*, 704 F.2d at 957.

Moreover, neither *Mary Beth G* nor *Madyun* concerned the unique circumstances posed by a traffic stop. Thus, Plaintiff has not identified any authority speaking to the factual scenario before the Court with sufficient detail.

**Second, Plaintiff does not provide relevant "controlling" authority.** Qualified immunity requires "controlling" authority for a right to be "clearly established," meaning precedent set by the Supreme court or (in this case) the Seventh Circuit. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Failing that, there must be a "robust consensus of cases of persuasive authority." *Id.* (internal quotations omitted).

Here, Plaintiff's argument against qualified immunity predominantly relies on district court decisions — some from within this Circuit, some from without. (d/e #56, p.33–34). These cases are not "controlling" authority or a "robust consensus of cases." Thus, Defendants do not believe these district court decisions cited by Plaintiff are germane to the qualified immunity issue.

Plaintiff's citations to the Seventh Circuit's decisions in *Mary Beth G* and *Madyun* are also unavailing, as neither speaks to the facts at issue here. *Mary Beth G* concerned strip searches, a type of search far removed from a patdown. *Mary Beth G v. Chicago*, 723 F.2d 1263, 1266 (7th Cir. 1983). For its part, Plaintiff cites *Madyun* as holding that "a pat-down search where the officer used both hands to feel along the plaintiff's buttocks and genital area was unreasonably intrusive." (d/e #56, p.34) (citing *Madyun*). However, *Madyun* held no such thing. To the contrary, summary judgment was affirmed for the defendant officers in *Madyun*, even though the record showed the officer searched the "inside of a prisoner's legs well above 'mid-thigh' in the crotch area" and "fe[lt] across a prisoner's buttocks." *Madyun*, 704 F.2d at 957.

Accordingly, Plaintiff has not met her burden of showing the right at issue was "clearly established." Qualified immunity is warranted, even giving Plaintiff the benefit of inferences that are contradicted by the body camera footage.

## C. DEPUTY FLOYD:

Defendant Floyd stands by his original argument: he did not fail to prevent Christensen's patdown search because (1) he did not and could not have observed anything problematic about the search, and (2) even if he did, he would not have had time to prevent the violation.

In Response, Plaintiff makes two main arguments.

First, Plaintiff argues Floyd *could* see Christensen's hands during the search, and that Floyd was not distracted during the patdown. The firs premise is partially true — Floyd's body camera shows he had a partial side view of the search, but did not have a clear view of where/how Christensen's hands were searching Plaintiff. (Reply to AMF #23). The second premise is false: Christensen was distracted by Plaintiff's passenger, Letika Graham, yelling at him from the car at the start of the search. (*See* Reply to AMF #25). Stated differently, the search was roughly seven seconds in total, and Floyd was distracted for the first portion of it.

Second, Plaintiff argues Floyd had time to intervene because Christensen "made multiple passes across and in between Plaintiff's buttocks." This presumes that the sheer act of passing over Plaintiff's buttocks during a patdown violates the Constitution — a presumption not borne out by any authority identified in any parties' brief. As for the locus of Plaintiff's claim — her belief that Deputy Christensen inserted his fingered between her buttocks — that allegedly only happened in the final moment of the search. Defendants have already argued this split-second

of the search did not provide Floyd with enough of an opportunity to intervene, and will not reiterate the argument now. (d/e #53, pp.33–36).

## IV. CONCLUSION

For the reasons stated above, summary judgment is warranted in Defendants' favor. Should this Court disagree, however, Defendants respectfully request this Court help focus the issues for trial by issuing an order clearly articulating which of Plaintiff's claims (and the associated portions of the body camera footage) present an issue of fact for the jury to consider.

Respectfully submitted,

CORY CHRISTENSEN, CHAMPAIGN
COUNTY, ILLINOIS, the CHAMPAIGN
COUNTY SHERIFF'S OFFICE, and CODY
FLOYD, Defendants

BY: s/Keith E. Fruehling
Keith E. Fruehling, ARDC #: 6216098
Bryan J. Vayr, ARDC #: 6327729
HEYL, ROYSTER, VOELKER & ALLEN
Suite 505, 301 N. Neil Street
Champaign, IL 61820
Telephone  217.344.0060
Email:  kfruehling@heylroyster.com
Email: bvayr@heylroyster.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2021, I electronically filed the foregoing REPLY TO THE RESPONSE TO MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system, which will send notification to:

Shneur Z. Nathan – snathan@nklawllp.com
Avi Kamionski – akamionski@nklawllp.com
Natalie Adeeyo – nadeeyo@nklawllp.com
Matthew J. Mc Carter – mmccarter@nklawllp.com; amanda@nklawllp.com; jalcala@nklawllp.com
Nathan & Kamionski, LLP
33 W. Monroe, Suite 1830
Chicago, IL 60603

Ms. Barbara J. Mann – bmann@co.champaign.il.us
Julia R. Rietz, Champaign County State's Attorney
101 E. Main St.
Urbana, IL 61801

I also hereby certify that I have mailed by United States Postal Service the above-referenced document to the following non-CM/ECF participant:  None.

BY: s/Keith E. Fruehling
 Heyl, Royster, Voelker & Allen

38883880_1